## THE CLEVELAND RAILWAY COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 84943. Promulgated June 22, 1937.

*Paul L. Holden, Esq.*, for the petitioner.
*T. M. Mather, Esq.*, for the respondent.

### OPINION.

MELLOTT: The Commissioner disallowed the deduction claimed by petitioner from its gross income for the year 1933 as amortization of the March 1, 1913, value of its franchise in the amount of $65,138.47, and determined a deficiency in its income tax for said year in the amount of $8,956.54. The sole issue is whether he erred in doing so. The facts were stipulated as follows:

The petitioner was organized under the laws of Ohio on February 26, 1893, to operate a system of street railways in the City of Cleveland, Ohio. Its right to operate its properties in the City of Cleveland is derived from franchises embodied in ordinances adopted by the Council of the City of Cleveland.

Since March 1, 1910, it has operated its properties under a franchise commonly known as the "Tayler-Plan Grant." For some time prior to the granting of the first Tayler Plan Grant franchise in 1909, there were four distinct street railway companies operating in the City of Cleveland under franchises granted for varying lengths of time by the City Council, one of which companies was the petitioner. In 1908 the petitioner acquired by absorption, purchase or consolidation all of the other railway properties in the City of Cleveland. The acquisition and consolidation of these properties was done under supervision of the United States District Court for the Northern District of Ohio, Eastern Division, as a part of the plan developed by Judge R. W. Tayler, then Judge of the United States District Court for the Northern District of Ohio, Eastern Division, under which the properties of all of the separate railway companies operating in Cleveland were to be acquired and operated by The Cleveland Railway Company on what was referred to as "a service at cost basis".

The plan contemplated that upon acquisition of the several properties, the entire assets of the petitioner would be revalued to eliminate from the capital account of the company alleged excessive values, whereupon a new franchise was to be granted the petitioner to replace the numerous franchises of various lives theretofore granted to petitioner and its constituent companies under which it was then operating. Judge Tayler acted as arbitrator in this revaluation and fixed the value of the total properties of the company at $22,933,300, included in which were the various franchises held by the company upon which he fixed a value of $3,615,843.89, which was thereupon set up as an asset on the books of the petitioner, and has so remained except for write-downs taken from time to time. Against the valuation fixed by Judge Tayler the company was permitted and did issue its capital stock at par to the extent of the excess over the bonded and floating indebtedness of the company, amounting to $9,416,000.

At the suggestion of Judge Tayler, and as a part of the so-called "Tayler Plan", the City Council of Cleveland then passed an ordinance granting the petitioner a new franchise which became effective March 1, 1910, which was commonly known as the "Tayler Plan Grant". The franchise was embodied in Ordinance No. 16238-A and was for the period ending May 1, 1934. Under that franchise and subsequent renewals, the petitioner has continuously operated the entire street railway system in the City of Cleveland. The franchise had a fair value remaining as of March 1, 1913, of $3,181,932.31.

The franchise granted by Ordinance 16238-A was superseded by Ordinance 48845-A passed by the City Council of the City of Cleveland on April 7, 1919, effective May 18, 1919, renewing the franchise of the company for a period ending May 1, 1944. Ordinance 48845-A was superseded by Ordinance 70561-A passed by the Council of the City of Cleveland on April 26, 1926, effective July 1, 1926, renewing the franchise for a period ending July 1, 1951, under which petitioner operated its properties during 1933. Each of the franchises embodied in the said Ordinances was accepted by the petitioner and required that all pre-existing franchises be surrendered by the petitioner in consideration of the granting of the new franchise embodied in the respective Ordinances. Printed copies of Ordinances 16238-A, 48845-A and 70561-A are submitted herewith as exhibits.

In *Cleveland Railway Company* v. *Commissioner*, 33 B. T. A. 114, involving petitioner's income taxes for the years 1922 to 1928, the Commissioner agreed to an annual allowance for amortization of the petitioner's franchise value for each of the years involved.

If the Board shall find that petitioner is entitled to amortize the March 1, 1913 value of its franchise, then it is agreed that the amount allowable for the tax year 1933 is $65,138.47 as deducted by petitioner in its return for that year, and the Board may enter an order of no deficiency in petitioner's taxes for said year.

The ordinances referred to in the stipulation were introduced in evidence, but we deem it unnecessary to set them out in detail herein. Brief reference will, however, be made to several sections of them.

It is conceded that the franchise is property (see *Wilmington Railroad* v. *Reid*, 13 Wall. 264; *New York Electric Lines Co.* v. *Empire City Subway Co.*, 235 U. S. 179), and that it was used in the taxpayer's business during the taxable year. If its use in petitioner's trade or business "is definitely limited in duration" it may be the subject of a depreciation allowance. (See article 203 of Regulations 77.[1])

But, says the Commissioner, "the franchise is, in effect, perpetual and therefore, not subject to amortization." (The quotation is from his notice of deficiency.) This the petitioner expressly denies and thus arises the sole issue for decision. We do not understand that petitioner contends it would be entitled to depreciation if the franchise is perpetual, but in this connection see *Coca-Cola Bottling Co.*, 6 B. T. A. 1333; and *Taylor* v. *Commissioner*, 51 Fed. (2d) 915; certiorari denied, 284 U. S. 689.

It is agreed that the statutes of Ohio (sec. 3177, General Code) prohibit and make invalid a grant for the construction and operation of a street railroad for a greater period than 25 years from the date of such grant or renewal. The Commissioner argues, however, that "the experience of the petitioner, in having had two renewals of the franchise prior to the taxable year, shows that the original franchise and each subsequent renewal did not definitely limit the franchise to a certain period, but rather that each renewal only extended the franchise for a period at a time. Had the franchise been definitely limited, it is quite obvious that it could not have been renewed." He also relies upon a prior decision of this Board (*Cleveland Railway Co.*, 10 B. T. A. 310, 320) wherein it is said:

The ordinance placed a valuation on the assets as of the date of the acceptance of the franchise and provided that additional assets could only be acquired

[1] ART. 203. *Depreciation of intangible property.*—Intangibles, the use of which in the trade or business is definitely limited in duration, may be the subject of a depreciation allowance. Examples are patents and copyrights, licenses, and franchises. Intangibles, the use of which in the business or trade is not so limited, will not usually be a proper subject of such an allowance. If, however, an intangible asset acquired through capital outlay is known from experience to be of value in the business for only a limited period, the length of which can be estimated from experience with reasonable certainty, such intangible asset may be the subject of a depreciation allowance, provided the facts are fully shown in the return or prior thereto to the satisfaction of the Commissioner. No deduction for depreciation, including obsolescence, is allowable in respect of good will.

with the consent of the city. The franchise is in effect perpetual but the city may, by giving proper notice, acquire the assets of the petitioner at the valuaation, plus 10%. In the event of forfeiture the city takes them over at cost.

The quoted language appears in that part of the opinion in which was recounted a brief history of petitioner together with a summation of the circumstances under which the franchise was granted. The issues in that proceeding, however, did not require the Board to decide whether the franchise was perpetual or not, the major issue being, as expressed by the Board, "what constitutes petitioner's income in a taxable year", minor issues being whether the imposition of the tax violated the implied constitutional inhibition against the Federal Government taxing the means and instrumentalities of the city of Cleveland and whether the company's treasury stock should be included in its invested capital. Under the circumstances it must be held that the decision is not *res judicata* of the issue now raised.

It is generally recognized that a franchise is the subject of contract between the state and the grantee and a contract thus created has the same status as any other contract recognized by the law. (Cf. *Blair* v. *Chicago*, 201 U. S. 400.) In so far as the grantee is concerned, it has a right not unlike that which a lessee under a lease contract acquires. Petitioner contends that such an analogy exists and that the method of determining the amount of the amortization under its franchise and the various extensions or renewals, should be the same as that frequently approved by the courts and by this Board in cases involving leases. A typical illustration of this method is found in *William Penn Hotel Co.*, 23 B. T. A. 566, a decision in which the Commissioner acquiesced. Therein the taxpayer acquired a lease in 1920 for $50,000. It was due to run for a period of 10 years, but in 1923, by the payment of an additional $1,000, the taxpayer secured a 10-year extension, viz., until 1940. This Board held that petitioner was entitled to a deduction as amortization during the fiscal year ending June 30, 1924, of one-seventeenth of the unexhausted cost of the lease as extended. To the same effect see also *Harris-Emery Co.*, 10 B. T. A. 297; *Pig & Whistle Co.*, 9 B. T. A. 668; *E. M. Diebold*, 19 B. T. A. 438; *Bonwit Teller & Co.* v. *Commissioner*, 53 Fed. (2d) 381; certiorari denied, 286 U. S. 690. Apparently the respondent does not deny the correctness of the method, for he has stipulated that if the franchise is not perpetual, the computation of the petitioner, which was made by the same method as approved by the Board in the cases cited, *supra*, is correct.

Respondent's contention that if the franchise had been definitely limited by its terms, it could not have been renewed, is not sound. Of course it could have been renewed and as a matter of fact it was renewed twice. Here again it is analogous to the extension or renewal of a lease; and the fact that such renewals or extensions have

been made is, in itself, substantial evidence that such renewals or extensions were necessary in order to keep it in force.

We hold that the franchise is not perpetual, and, unless respondent's alternative contention be sustained, it must be held that petitioner is entitled to amortize the adjusted March 1, 1913, value of the franchise at the rate of one twenty-fifth per annum from the date of the last renewal, July 1, 1926 (Exhibit 3), until the first day of July 1951, the date of its expiration.

The alternative, or possibly it may be more accurate to say the supplemental, contention of the respondent is that it would be improper to allow any amortization of the value of the present franchise to petitioner because the franchise, by its terms, provides for the ultimate recovery by petitioner of the cost thereof from the city or a succeeding grantee unless it is renewed in perpetuity to it. In this connection he relies upon the provisions of sections 33, 34, 36, 37, 40, and 44 of Exhibit 3 and their prototypes in Exhibits 1 and 2.

The sections provide, in substance, that petitioner grants to the city and the city reserves to itself the right, at any time during the life of the franchise or any renewal of it, to purchase and take over the entire system, upon giving at least six months previous notice in writing, and paying therefor its capital value, plus 10 percent, if taken over prior to the expiration of the franchise, or its capital value, if taken over after the expiration of the franchise. The capital value, as defined by the ordinance granting the franchise, includes a franchise value of $3,615,843.89. "Accordingly"—says the respondent—"if the property were taken over by the city, the taxpayer would be reimbursed to the full extent of its franchise and, accordingly, amortization in anticipation of the expiration of the franchise would not be proper." The fallacy in this argument lies in the fact that the city does not obligate itself to take over the property at any time but merely reserves an option to do so if it chooses. If petitioner had the option of selling the property to the city on the basis set out above—or possibly on any other basis—the situation might be different. As to whether under such circumstances it would be entitled to amortize the value of its franchise we express no opinion. We do hold, however, that the mere right of the city to exercise such option does not, in itself, deprive petitioner of its right to amortization. In addition, the mere fact that a taxpayer may be able to sell a capital asset for the amount of its cost, or even at a profit, does not deprive it of its right under the revenue act to an allowance for depreciation of such asset in determining its net taxable income during years prior to such sale or disposition. As a matter of fact, if an asset is depreciable, or if amortization should have been taken, the taxpayer, upon sale, is required to reduce its

basis, for the purpose of computing his gain or loss, by the amount which should have been claimed. *Kittredge* v. *Commissioner*, 88 Fed. (2d) 632.

One of the sections referred to, *supra*, (i. e. sec. 37) provides, in substance, that if the city does not exercise its option to purchase the property at the expiration of the franchise, any person to whom a franchise may be granted "to operate a street railway and motor coach system over the then existing lines, or any of them, or any part of them" shall be under obligation "to purchase said property or such portion thereof" upon the terms provided for purchase by the city. Respondent argues that under this provision the petitioner will, in any event, be fully reimbursed for its capital investment. This presupposes many things—that in 1951 a person will be found who is willing and able to assume what may then be an onerous contract obligation—that the "existing lines" will be desired rather than new routes—and that the use of street railways will not be superseded by buses or some other form of transportation. While the section gives a distinct advantage to petitioner we are of the opinion that it is not sufficient, even in conjunction with the other sections, to provide for reimbursement in full to petitioner for its capital investment or to deprive it of its right to amortize the remaining March 1, 1913, value of its franchise.

*Judgment will be entered for the petitioner.*