ELSTON CO., to Use and Benefit of UNIT-
ED STATES BREWING CO., v. UNIT-
ED STATES.

No. 43017.

Court of Claims.

Dec. 6, 1937.

As Corrected Jan. 14, 1938.

Lee I. Park, of Washington, D. C. (William J. Froelich and Dwight H. Green, both of Chicago, Ill., and Hamel, Park & Saunders, of Washington, D. C., on the brief), for plaintiff.

Joseph H. Sheppard, of Washington, D. C., and James W. Morris, Asst. Atty. Gen. (Robert N. Anderson and Fred K. Dyar, both of Washington, D. C., on the brief), for the United States.

Before BOOTH, Chief Justice, and GREEN, LITTLETON, WILLIAMS, and WHALEY, Judges.

WILLIAMS, Judge.

Plaintiff sues to recover $87,593.79, an alleged overpayment of income and profits taxes for the fiscal year ended September 30, 1919, together with interest thereon from the date of payment. The claim is based upon the failure of the Commissioner of Internal Revenue to allow as a deduction from gross income the sum of $258,575.70, representing plaintiff's cash investment in renewal rights of Chicago saloon licenses which became worthless during the year. The deduction is claimed by virtue of the provisions of sections 202(a) and 234(a) (4) of the Revenue Act of 1918 (40 Stat. 1060, 1077, 1078). These provisions are:

"Sec. 202(a). That for the purpose of ascertaining the gain derived or loss sustained from the sale or other disposition of property, real, personal, or mixed, the basis shall be—

"(1) In the case of property acquired before March 1, 1913, the fair market price or value of such property as of that date; and

"(2) In the case of property acquired on or after that date, the cost thereof."

"Sec. 234(a). That in computing the net income of a corporation subject to the

tax imposed by section 230 there shall be allowed as deductions: * * *

"(4) Losses sustained during the taxable year and not compensated for by insurance or otherwise."

Prior to June 30, 1919, plaintiff was engaged in the business of manufacturing and selling beer containing more than one-half of 1 per cent. of alcohol by volume. On that date it was forced to discontinue that business as the result of prohibition legislation.

In 1906 the city of Chicago enacted an ordinance known as the Harkins limitation ordinance, which limited the number of saloon licenses that might be issued by the city authorities to one for every 500 of the population of the city. It was provided, however, that each and every one of the saloon licenses issued and in force on July 31, 1906, might be renewed by the city, even though the aggregate number of licenses exceeded the number provided for in the ordinance on a population basis. At the time of the enactment of the Harkins limitation ordinance in 1906, and as of July 31, 1906, the number of licenses issued and then in force for saloons and dramshops in the city of Chicago, which licenses were renewable under the provisions of the ordinance, was greatly in excess of the number of such licenses issuable under the ordinance on the basis of one for every 500 of the population of the city. From the time of the enactment of the ordinance until June 30, 1919, the population of the city of Chicago did not increase to a point where, on the basis of one license for every 500 of population, the number of such licenses issuable under the ordinance equalled the number actually issued.

From 1906 to the beginning of the fiscal year 1919, it was the custom and practice in the city of Chicago to purchase and sell renewal rights of saloon licenses and the city officials administered the Harkins limitation ordinance in full recognition of such custom and practice. While the renewal of the licenses rested entirely within the discretion of the administrative authorities it had been the universal practice of such authorities to issue licenses to holders of old licenses or the registered assignees of such original holders. The issuing of new licenses to holders of old licenses had become so well established that these renewal rights were considered very valuable and were bought and sold

with the full knowledge and consent of the city authorities. They were recognized as property by trustees in bankruptcy appointed by the District Courts of the United States and were sold by such trustees as property belonging to the bankrupt's estate.

At the beginning of the fiscal year 1919 plaintiff owned 382 saloon license renewal rights. Of this number 186 had been acquired without cost to plaintiff prior to the time renewal rights had acquired a market value. Of the remaining 196 renewals plaintiff purchased 143 prior to March 1, 1913, at a cost of $173,209.47, which on March 1, 1913, had a fair market value at least equal to their cost, and 53 of such renewal rights were purchased by plaintiff subsequent to March 1, 1913, at an actual cost of $85,366.23. All these renewal rights became worthless and of no value whatever during the taxable year 1919 and were abandoned by plaintiff during the year by reason of the effect of the impending ratification of the Eighteenth Amendment to the Constitution and the War-Time Prohibition Act (40 Stat. 1046) which became effective on and after June 30, 1919.

The sole question in the case is whether the sum of $258,575.70, the cost of plaintiff's investment in renewal rights of Chicago saloon licenses, which became worthless and of no value within the taxable year 1919, is deductible from its gross income for the year as a loss within the meaning of section 234(a) (4), supra, of the Revenue Act of 1918.

Coming directly to the issue presented we are of the opinion plaintiff is entitled to the deduction claimed. There can be no question, we think, that renewal rights of saloon licenses involved in this case constituted property within the meaning of section 202 of the Revenue Act of 1918 which fixes the basis for gain or loss "from the sale or other disposition of property, real, personal, or mixed." This property represented an actual cost to plaintiff of $258.575.70. It became absolutely worthless and was abandoned by plaintiff in the year 1919. This brings the claim squarely within the meaning of the language of section 234(a) (4) of the Revenue Act of 1918, "losses sustained during the taxable year and not compensated for by insurance or otherwise," as such words are ordinarily used and understood. Article 143 of Regulations 45, promulgated for the administration of the 1918 Act, is equally clear:

"Art. 143. *Loss of useful value.*—When through some change in business conditions the usefulness in the business of some or all of the capital assets is suddenly terminated, so that the taxpayer discontinues the business or discards such assets permanently from use in the business, he may claim as a loss for the year in which he takes such action the difference between the cost or the fair market value as of March 1, 1913, of any asset so discarded (less any depreciation sustained) and its salvage value remaining. This exception to the rule requiring a sale or other disposition of property in order to establish a loss requires proof of some unforeseen cause by reason of which the property must be prematurely discarded, as, for example, where an increase in the cost of or other change in the manufacture of any product makes it necessary to abandon such manufacture, to which special machinery is exclusively devoted, or where new legislation directly or indirectly makes the continued profitable use of the property impossible. * * *"

█ It thus appears that both the statute and the regulations in unambiguous terms cover the loss claimed in this case and authorizes its deduction from gross income for the year in which it was sustained. The fact that plaintiff is a brewer is immaterial and has no bearing on the case, as the taxable incomes of brewers are arrived at according to the rules that govern taxable incomes of others. Gambrinus Brewery Co. v. Anderson, 282 U.S. 638, 51 S.Ct. 260, 261, 75 L.Ed. 588.

The defendant in the brief says: "the decisions denying similar claims are numerous," and cites various cases which it contends support that proposition. Examination of the cases cited reveals the fact that in each of them the deduction was claimed under section 234(a) (7) or section 214(a) (8) because of obsolescence of good will. In Clarke v. Haberle Crystal Springs Brewing Co., 280 U.S. 384, 50 S.Ct. 155, 74 L.Ed. 498, the Supreme Court laid down the rule that the obsolescence of good will was not a deductible loss under section 234(a) (7) of the Revenue Act of 1918 (40 Stat. 1077, 1078), and in Renziehausen v. Lucas, 280 U.S. 387, 50 S.Ct. 156, 74 L.Ed. 501, decided on the same date, held that the same rule applied to an individual engaged in the liquor business. Obviously these decisions are not controlling in the instant case where an entirely different loss claim from that of the obsolescence of good will is involved. The Supreme Court in the Gambrinus Case, supra, stated that the language used in the Haberle Case definitely limits the opinion "to obsolescence of good will." Since the other cases cited by the defendant all deal in loss deductions claimed by the obsolescence of good will resulting from prohibition no useful purpose would be served by a detailed discussion of them. It is sufficient to say they are not in point and in no way support the defendant's contention that "the decisions denying similar claims are numerous." Careful search discloses no case in which the Supreme Court or any other court with jurisdiction in federal income tax matters has held that a loss claim similar to the one involved here is not deductible. On the other hand the Board of Tax Appeals, in well considered decisions from which the Commissioner has taken no appeal, although he had the right to do so, has held that deduction claims identical in every respect with that of the present case are allowable.

William Zakon v. Commissioner, 7 B.T.A. 687, involved renewal rights of saloon licenses in the city of Boston. In allowing the deduction claimed the Board said:

"While such licenses were issued annually, expiring on May 1 of each year, it was the established custom of the board to issue such annual licenses to the holders of licenses for the previous year. The holders of any license might transfer it to another, to whom a new license would be issued by the license board, if the purchaser were found to be acceptable by the board. Under such circumstances the holder of such a license had an asset which had a value entirely separate and distinct from the right to conduct the business of a liquor dealer for the remainder of the year for which such license was issued. The courts have recognized that such value existed and constituted property rights. * * *

"The license cost the petitioner $11,000 in 1911. In 1913, it had a value in excess of that amount. In 1919, it became worthless. The taxpayer sustained a loss of $11,000 which is deductible in 1919. The good will, however, appears to have cost the taxpayer nothing and under the decisions quoted there is no deductible loss on account of that item."

McAvoy Co. v. Commissioner, 10 B.T.A. 1017, like the instant case, involved renewal rights of saloon licenses in the city of Chicago, the facts being essentially the same as those in the instant case. In allowing the deduction claimed the Board said:

"In the opinion of the Board, the contention advanced by the respondent that a loss can not be allowed since the petitioner did not own property which it lost when prohibition became effective, is unsound. While that which petitioner lost may not conform to some technical definitions of property, it can not be denied that the petitioner acquired something of value which it subsequently lost. In the business which petitioner conducted, it was highly essential that it have a market for its product. One of its principal markets was the saloon, but it was not permitted to hold a saloon license or operate a saloon. What it did, therefore, was to purchase these renewal rights and it was thereby in a position to have the saloon licenses issued to persons who would agree to purchase its product. By this means petitioner's income was increased. When the "War-time Prohibition Act" became effective and prohibited the manufacture and sale of petitioner's product after June 30, 1919, whatever rights or privileges it formerly enjoyed with respect to these renewal rights were no longer of value. Petitioner paid substantial amounts for these assets, and this investment was lost when prohibition became effective and their use or value to it ceased to exist. * * *

"In view of the foregoing, the Board is of the opinion that the petitioner suffered a loss in the fiscal year ended September 30, 1919, which is deductible under the provisions of section 234(a) (4) of the Revenue Act of 1918."

Best Brewery Co. v. Commissioner, 16 B.T.A. 1354, also involved renewal rights of saloon licenses of the city of Chicago. The Board followed its decisions in the Zakon and McAvoy Cases and held that the cost of such licenses becoming worthless in 1919 following prohibitory legislation was a proper deduction under the provisions of section 234(a) (4) of the Revenue Act of 1918 (40 Stat. 1077, 1078).

The defendant suggests that the Board cases just referred to were decided prior to the decisions of the Supreme Court in Clarke v. Haberle Crystal Springs Co., supra, and Renziehausen v. Lucas, supra.

But the fact is immaterial unless the loss deductions claimed in the Board cases can be classified with good will. Obviously they cannot be so classified. The renewal rights of saloon licenses in those cases, as in the instant case, were income producing assets, subject to purchase, sale, and assignment, separate from the business itself. They were assignable assets distinct from the business. In this respect they were in the same category with patents, contracts, and franchises. They became absolutely worthless and were necessarily abandoned in the taxable year 1919 as a result of prohibitory legislation. An ordinary taxpayer would, we think, undoubtedly be entitled to deduct such loss in computing his taxable income, and under the doctrine of the Gambrinus Case plaintiff's taxable income must be arrived at according to the rules that govern taxable income of others.

From what has been said it follows that plaintiff is entitled to recover, and is hereby awarded a judgment in the sum of $90,250.40, with interest as provided by law. It is so ordered.