PHILADELPHIA PARK AMUSE-MENT CO.

v.

The UNITED STATES.

No. 312–52.

United States Court of Claims.

Nov. 30, 1954.

Elizabeth B. Davis, Washington, D. C., H. Brian Holland, Asst. Atty. Gen., Andrew D. Sharpe and Lee A. Jackson, Washington, D. C., on the brief, for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and LARAMORE, Judges.

LARAMORE, Judge.

The taxpayer corporation sues to recover $42,864.50, with interest thereon, representing alleged overpayment of income taxes for the calendar years 1944 and 1945. The taxpayer employed the accrual method of accounting and reported its income on a calendar year basis. The issue presented in this case is whether or not the taxpayer is entitled to include as a part of the cost of its franchise, for purposes of determining depreciation and loss due to abandonment, the undepreciated cost of a bridge exchanged for a 10-year extension of the franchise. The facts which have been stipulated by the parties may be summarized as follows: The taxpayer's predecessor was granted on July 6, 1889, by the City of Philadelphia, a franchise to construct, operate, and maintain for 50 years a passenger railway in Fairmount Park at its own cost and expense. Upon the expiration of the 50-year term the franchise was to continue indefinitely for additional successive 10-year terms unless the City gave one year's written notice of its wish to terminate it at the end of the 50-year term or the 10-year term then in duration. Upon the termination of the license the City had the right to purchase all, but not just part of, the improvements; i. e., railway cars, tracks, bridges, buildings, etc., made by the licensee at the cash value at the time of purchase, or in the event the City did not desire to purchase the assets the licensee had a specified period of time within which to remove them.

Pursuant to the franchise the taxpayer's predecessor constructed the bridge in question, commonly known as Strawberry Bridge, over the Schuylkill River

· John C. Reid, Washington, D. C., James S. Y. Ivins and Ivins, Phillips & Barker, Washington, D. C., on the briefs, for plaintiff.

at a cost of $381,000. The bridge was 79½ feet wide and carried pedestrian and vehicular traffic in addition to taxpayer's streetcars. The taxpayer's principal business was the operation of an amusement park and the street railway was employed in the transportation of customers to the park. With the increase in automobile transportation the proportion of customers carried to the amusement park by the taxpayer's streetcars decreased over the years and during the latter years of its operation losses were sustained. Early in 1934 the City, in writing the taxpayer, pointed out that Strawberry Bridge was in need of extensive repairs, that it was taxpayer's obligation to make the repairs at taxpayer's expense, and threatened to close the bridge unless the repairs were made promptly. The taxpayer wrote the City explaining that its financial condition prevented the making of extensive repairs to the bridge and offered to transfer the ownership of the bridge to the City in exchange for a 10-year extension of the railway franchise. The City accepted the offer and on August 3, 1934, Strawberry Bridge was transferred to the City. The taxpayer reserved its right-of-way over the bridge for the duration of its franchise and agreed to maintain its facilities thereon. On November 14, 1934, the City amended the franchise and extended it from July 24, 1939, to July 24, 1949. The adjusted basis, i. e., the undepreciated or unrecovered cost of Strawberry Bridge at the time of the exchange was $228,852.74. The taxpayer's bookkeeper took depreciation on the bridge for the part of 1934 that taxpayer owned it and promptly wrote the asset off the books by a direct debit to surplus of $228,852.74, without reporting any gain or loss on the exchange or adding the undepreciated cost or fair market value of the bridge to the cost of the franchise. From that time until 1946 the taxpayer's bookkeeper did not record on the taxpayer's books or claim a deduction on its returns for the amortization of this cost.

He also failed to take the undisputed deduction for the amortization of the undepreciated portion, $50,000, of the original cost of the franchise.

In 1946 the taxpayer arranged with a bus company to give passenger service to its amusement park, ceased operation of the railway, and abandoned its franchise. In its 1946 tax return the taxpayer claimed a loss due to abandonment of the railroad of $336,380.04, $74,445.89 of which was claimed to represent the undepreciated cost of the franchise. This produced a $128,897.97 net loss for the year 1946, and taxpayer claimed a net operating loss carryback to 1944 and 1945 under section 122(b) of the Code, 26 U.S.C.A. § 122(b).

On December 15, 1947, the taxpayer filed a claim for refund of 1944 taxes in the amount of $6,087.28 based on a claimed depreciation deduction of $15,218.21. This claim was founded upon the ground that the undepreciated cost of Strawberry Bridge, $228,852.74, was the cost of the 10-year extension of its franchise and, therefore, should be amortized over the remaining life of the franchise. On December 30, 1948, taxpayer filed a second claim for refund of 1944 income taxes. This claim was in the amount of $58,791.91 and was predicated on the following grounds: (1) net operating loss carryback deduction of $128,897.97 from 1946, (2) depreciation deduction of $3,816.66 as the 1944 proportion of the cost basis of taxpayer's original franchise, and (3) a repetition of the first claim for refund. On October 26, 1950, the Commissioner of Internal Revenue allowed $55,036.71 of the net operating loss carryback and $3,333.33 of the $3,816.66 claim for depreciation of the original cost of the franchise, but denied taxpayer's first claim for refund for 1944 and the repetition thereof in the second claim for a $15,218.21 depreciation deduction based upon the undepreciated cost of Strawberry Bridge. The Commissioner refunded to the taxpayer, on account of its 1944 taxes, $22,014.69 with interest thereon.

On December 30, 1948, taxpayer filed a claim for refund of income taxes for the year 1945 in the amount of $6,087.28, claiming a deduction of $3,816.66 as the depreciation deduction for the amortization of the cost of its original franchise and $15,218.21 as the depreciation deduction for the amortization of the cost of the 10-year extension of its franchise. On October 26, 1950, the Commissioner allowed $3,333.33 of the claimed deduction for the original cost of the franchise and, accordingly, refunded to taxpayer $1,282.05 with interest thereon, but denied the balance of the claim.

In its petition the taxpayer alleged that the Commissioner's rejection of all of its first claim for 1944, part of its second claim for 1944, and part of its claim for 1945 was erroneous. The defendant raised the question of statute of limitations in respect to the part of the taxpayer's claim that pertained to the allowance of a deduction for depreciation of the original cost of the franchise for the year 1944. The taxpayer claimed $3,816.16, whereas the Commissioner allowed only $3,333.33. The difference is a result of the Commissioner's amortization of the original cost of the franchise over the period beginning on the date the franchise was granted as opposed to taxpayer's desire to have it amortized over the period beginning on the date of the start of operation of the railway. This issue apparently has been abandoned by both parties inasmuch as no mention was made of it in the briefs or on oral argument. Therefore, we are only concerned with the cost basis, if any, of the 10-year extension of taxpayer's franchise and the tax consequences thereof for the years 1944, 1945, and 1946.

It is clear that the cost of this type franchise can be amortized over its life by the taking of depreciation deduction under section 23(l) [1] of the Code. See Regulation 111, section 29.23(1)–3; Cleveland Railway Co. v. Commissioner, 36 B.T.A. 208, and cases cited therein. Therefore, the cost basis, if any, of the 10-year extension of the franchise should be depreciated over the remainder of the old term and over the new term. East Kauai Water Co. v. Commissioner, 11 T.C. 1014, and cases cited therein. It is also clear that when a franchise is abandoned prior to the end of its term the owner is entitled to deduct, under section 23(f) [2] of the Code, as a loss in the year of abandonment, the undepreciated cost of the franchise at that time. Elston Co., to Use and Benefit of U. S. Brewing Co. v. United States, 21 F.Supp. 267, 86 Ct.Cl. 136, and cases cited therein.

This brings us to the question of what is the cost basis of the 10-year extension of taxpayer's franchise. Although defendant contends that Strawberry Bridge was either worthless or not "exchanged" for the 10-year extension of the franchise, we believe that the bridge had some value, and that the contract under which the bridge was transferred to the City clearly indicates that the one was given in consideration of the other. The taxpayer, however, has failed to show that the exchange was one that falls within the nonrecognition provisions of section 112(b) of the Code and, therefore, it was a taxable exchange under section 112(a) [3] of the Code.

1. Section 23(l) provides: [In computing net income there shall be allowed as deductions:] "Depreciation. A reasonable allowance for the exhaustion, wear and tear (including a reasonable allowance for obsolescence)—(1) of property used in the trade or business, or (2) of property held for the production of income." 26 U.S.C.A. § 23(l).

2. Section 23 (f) provides: [In computing net income there shall be allowed as deductions:] "Losses by corporations. In the case of a corporation, losses sustained during the taxable year and not compensated for by insurance or otherwise."

3. Section 112 (a) provides: "General Rule. Upon the sale or exchange of property the entire amount of the gain or loss, determined under section 111, shall be recognized, except as hereinafter provided in this section." 26 U.S.C.A. § 112.

The gain or loss, whichever the case may have been, should have been recognized, and the cost basis under section 113(a)[4] of the Code, of the 10-year extension of the franchise was the cost to the taxpayer. The succinct statement in section 113(a) that "the basis of property shall be the cost of such property" although clear in principle, is frequently difficult in application. One view is that the cost basis of property received in a taxable exchange is the fair market value of the property *given* in the exchange.[5] The other view is that the cost basis of property received in a taxable exchange is the fair market value of the property *received* in the exchange.[6] As will be seen from the cases and some of the Commissioner's rulings [7] the Commissioner's position has not been altogether consistent on this question. The view that "cost" is the fair market value of the property given is predicated on the theory that the cost to the taxpayer is the economic value relinquished. The view that "cost" is the fair market value of the property received is based upon the theory that the term "cost" is a tax concept and must be considered in the light of the designed interrelationship of sections 111, 112, 113, and 114, 26 U.S.C.A. § 114, and the prime role that the basis of property plays in determining tax liability. We believe that when the question is considered in the latter context that the cost basis of the property received in a taxable exchange is the fair market value of the property *received* in the exchange.

When property is exchanged for property in a taxable exchange the taxpayer is taxed on the difference between the adjusted basis of the property given in exchange and the fair market value of the property received in exchange. For purposes of determining gain or loss the fair market value of the property received is treated as cash and taxed accordingly. To maintain harmony with the fundamental purpose of these sections, it is necessary to consider the fair market value of the property received as the cost basis to the taxpayer. The failure to do so would result in allowing the taxpayer a stepped-up basis, without paying a tax therefor, if the fair market value of the property received is less than the fair market value of the property given, and the taxpayer would be subjected to a double tax if the fair market value of the property received is more than the fair market value of the property given. By holding that the fair market value of the property received in a taxable exchange is the cost basis, the above discrepancy is avoided and the

4. Section 113 (a) provides: "Basis, (unadjusted) of property. The basis of property shall be the cost of such property; except that * * *." 26 U.S.C.A. § 113.

5. 1 Montgomery, Federal Taxes, Corporations and Partnerships (1952–53) 352; 1 P–H ¶ 10, 506, 1954; Budd International Corp. v. Commissioner, 3 Cir., 143 F.2d 784; Forstmann v. Rogers, 3 Cir., 128 F.2d 126; Champlin Refining Co. v. Commissioner, 10 Cir., 123 F.2d 202; Estate of Isadore L. Myers v. Commissioner, 1 T.C. 100; and the cases there cited. It should be noted that many of the statements made in the above cited authorities were made in connection with exchanges of property where the values were equal, presumed to be equal or the specific question was not disputed and therefore there would have been no difference in result.

6. Moroney and Colgan, Gain or Loss on Sale or Exchange, Fundamentals of Federal Taxation, Practicing Law Institute (1946); Rabkin & Johnson, Federal Income Gift and Estate Taxation, S3 Sec. 2; Greenbaum, The Basis of Property Shall Be the Cost of Such Property; How is Cost Defined?, 3 Tax.L.Rev. 351 (1948); Bodell v. Commissioner, 1 Cir., 154 F.2d 407; Commissioner of Internal Revenue v. Lincoln-Boyle Ice Co., 7 Cir., 93 F.2d 26; Hillyer, Edwards, Fuller, Inc. v. United States, D.C.E.D.La., 52 F.2d 742; Feathers v. Commissioner, 8 T.C. 376; Estate of Isadore L. Myers v. Commissioner, 1 T.C. 100 (concurring opinion); and the cases there cited.

7. Compare I.T. 2212, IV–2 C.B. 118 with I.T. 3523, 1941–2 C.B. 124 and the Commissioner's equivocal acquiescence in Estate of Isadore L. Myers case, supra, 1943–1 C.B. 17.

basis of the property received will equal the adjusted basis of the property given plus any gain recognized, or that should have been recognized, or minus any loss recognized, or that should have been recognized.

 Therefore, the cost basis of the 10-year extension of the franchise was its fair market value on August 3, 1934, the date of the exchange. The determination of whether the cost basis of the property received is its fair market value or the fair market value of the property given in exchange therefor, although necessary to the decision of the case, is generally not of great practical significance because the value of the two properties exchanged in an arms-length transaction are either equal in fact, or are presumed to be equal.[8] The record in this case indicates that the 1934 exchange was an arms-length transaction and, therefore, if the value of the extended franchise cannot be determined with reasonable accuracy, it would be reasonable and fair to assume that the value of Strawberry Bridge was equal to the 10-year extension of the franchise. The fair market value of the 10-year extension of the franchise should be established but, if that value cannot be determined with reasonable certainty, the fair market value of Strawberry Bridge should be established and that will be presumed to be the value of the extended franchise. This value cannot be determined from the facts now before us since the case was prosecuted on a different theory.

 The taxpayer contends that the market value of the extended franchise or Strawberry Bridge could not be ascertained and, therefore, it should be entitled to carry over the undepreciated cost basis of the bridge as the cost of the extended franchise under section 113(b) (2).[9] If the value of the extended franchise or bridge cannot be ascertained with a reasonable degree of accuracy, the taxpayer is entitled to carry over the undepreciated cost of the bridge as the cost basis of the extended franchise. Helvering v. Tex-Pen Oil Co., 300 U.S. 481, 499, 57 S.Ct. 569, 81 L.Ed. 755; Gould Securities Co. v. United States, 2 Cir., 96 F.2d 780. However, it is only in rare and extraordinary cases that the value of the property exchanged cannot be ascertained with reasonable accuracy. We are presently of the opinion that either the value of the extended franchise or the bridge can be determined with a reasonable degree of accuracy. Although the value of the extended franchise may be difficult or impossible to ascertain because of the nebulous and intangible characteristics inherent in such property, the value of the bridge is subject to more exact measurement. Consideration may be given to expert testimony on the value of comparable bridges, Strawberry Bridge's reproduction cost and its undepreciated cost, as well as other relevant factors.

 Therefore, because we deem it equitable, judgment should be suspended and the question of the value of the extended franchise on August 3, 1934, should be remanded to the Commissioner of this court for the taking of evidence and the filing of a report thereon.

 The failure of taxpayer to properly record the transaction in 1934 and thereafter does not prevent the correction of the error, especially under the circumstances of this case. Countway

8. See footnotes 5 and 6.

9. Section 113 (b) (2) provides: "Substituted basis. The term 'substituted basis' as used in this subsection means a basis determined under any provision of subsection (a) of this section or under any corresponding provision of a prior income tax law, providing that the basis shall be determined—(A) by reference to the basis in the hands of a transferor, donor, or grantor, or (B) by reference to other property held at any time by the person for whom the basis is to be determined."

**190**

v. Commissioner, 1 Cir., 127 F.2d 69. The taxpayer has lost not only the depreciation deductions for the years 1935 to 1944 of the cost of its original franchise, but also the benefit of the depreciation deduction for the cost of the extended franchise, even though the basis of the former was and the latter will be reduced by the amount of depreciation that should have been taken for this period. See section 113(b) (1) (B) of the Internal Revenue Code.

In the cases cited by taxpayer relating to losses claimed upon obtaining licenses and leases, or the extension or renewal thereof, the question presented was whether the amount involved was part of the cost of the license or lease and, therefore, should be capitalized and amortized over their life, or whether they were losses or expenses that should be deducted in the taxable year. In those cases either the amount in question was the actual cost, or property was not exchanged, or fair market value was not an issue. Those cases deal with different problems and are not applicable here.

We, therefore, conclude that the 1934 exchange was a taxable exchange and that the taxpayer is entitled to use as the cost basis of the 10-year extension of its franchise its fair market value on August 3, 1934, for purposes of determining depreciation and loss due to abandonment, as indicated in this opinion.

Accordingly, judgment will be suspended and the question of the value of the extended franchise on August 3, 1934, is remanded to the Commissioner of this court for the taking of evidence and the filing of a report thereon.

JONES, Chief Judge, and MADDEN, WHITAKER, and LITTLETON, Judges, concur.