OPINION. Raum, Judge: We are asked to determine Halsey’s basis in two separately acquired four-fifteenths interests in certain Los Angeles commercial property which was sold pursuant to condemnation proceedings to the State of California in 1951. If as petitioners contend Halsey incurred a loss on this sale, the Commissioner concedes that such loss is includible in computing a net operating loss for 1951 and the amount, if any, of the carryover of that net operating loss to the taxable years in issue may be computed under Rule 50. Since the amount received by Halsey in the condemnation proceedings is not in dispute,[2] the only issue before us is the determination of the basis of each of the four-fifteenths interests sold by him in the condemnation proceedings. It will be convenient to deal with each of these interests separately. 1. Interest acquired by inheritance. — Halsey acquired his original four-fifteenths interest in the Los Angeles hotel property by inheritance from his father, who died on October 4, 1926. It is agreed by the parties that Halsey’s basis in this interest and the allocation thereof between the land and building is dependent upon the fair market value of the Los Angeles hotel property and its component parts on the date of the father’s death. It is stipulated that the entire property was valued in the amount of $500,000 for Federal estate tax and California inheritance tax purposes, and the parties accept that figure as controlling here. Cf. Regs. Ill, sec. 29.113 (a) (5)-l (c). The principal matter in controversy in regard to Halsey’s basis in his inherited four-fifteenths interest is the allocation of the foregoing amount between the land and building, so that proper adjustments for depreciation may be made against that portion allocated to the building.[3] We have found as a fact that on the date of Halsey’s father’s death the land and building had fair market values of $432,500 and $67,500, respectively. Our finding is based to a considerable extent upon the testimony of an expert witness who impressed us as being highly reliable, who was familiar with the area over a long period of years, and who had valued this very property in 1926. The Commissioner presented no expert evidence on the 1926 allocation, and offered no rebuttal to petitioners’ evidence other than some unpersuasive testimony by one of Halsey’s brothers, Chester N. Williams, who had also inherited a four-fifteenths interest in the same property, and who testified that he “thought the building might be worth %ths of the total price * * * of $500,000” in computing his own depreciation deductions.[4] He also testified that he had “no idea what it [the land] was worth.” Our finding that the land had a fair market value of $432,500 in 1926 and that the building had a fair market value of $67,500 in 1926 disposes of everything in controversy between the parties as to Halsey’s basis in the four-fifteenths interest inherited from his father. The adjustments for depreciation of the building may be made in the computation under Hule 50.[5] Also, the Commissioner concedes that Halsey’s allocable share of certain stipulated additions to basis must be taken into consideration in determining the amount of his adjusted basis in his inherited four-fifteenths interest in the land and building. Thus, $1,348.35 paid as a storm assessment to the City of Los Angeles on February 20,1931, and $250.30 paid as attorney’s fees in connection with proceedings on a setback ordinance related to the land must be added to the total basis of the land. Similarly, $100 expended by the trust which held title to the building in 1933 and $200 expended by the trust in 1934 must be added to the total basis of the building. These adjustments will also be taken into account in the Hule 50 computation. 2. Interest acquired by exchange. — Halsey acquired a second four-fifteenths interest in the Los Angeles hotel property on April 1,1941, by an exchange of property interests with his brother Burdick F. Williams. Halsey traded a one-half interest in a residence in Piedmont, California, its furnishings, some silverware and silver pieces, inherited from his mother, for Burdick’s four-fifteenths interest in the hotel property. Neither Halsey nor Burdick reported any gain or loss on the exchange in their Federal income tax returns for 1941. However, neither of the parties herein argues that the exchange was nontaxable. The only matter presently in dispute is Halsey’s basis in the four-fifteenths interest he acquired by the exchange. Petitioners argue that this basis is equal to the fair market value of the interest Halsey received, that is, of a four-fifteenths interest in the hotel property on April 1, 1941. The Commissioner’s position is that the basis is equivalent to the fair market value of the interest given up, that is of Halsey’s one-half interest in the Piedmont residence and related personal property. Both parties cite and rely upon Philadelphia Park Amusement Co. v. United States, 126 F. Supp. 184 (Ct. CL). In the circumstances of this case, where the property interests exchanged both had an ascertainable fair market value as of the date of the exchange, we think petitioners’ statement of the applicable principle of law correct. In the Philadelphia Parle case, 126 F. Supp. at 188-189, the reason for selecting the fair market value of the property interest received as the basis of such property was explained as follows: When property is exchanged for property in a taxable exchange the taxpayer is taxed on the difference between the adjusted basis of the property given in exchange and the fair market value of the property received in exchange. For purposes of determining gain or loss the fair market value of the property received is treated as cash and taxed accordingly. To maintain harmony with the fundamental purpose of these sections, it is necessary to consider the fair market value of the property received as the cost basis to the taxpayer. The failure to do so would result in allowing the taxpayer a stepped-up basis, without paying a tax therefor, if the fair market value of the property received is less than the fair market value of the property given, and the taxpayer would be subjected to a double tax if the fair market value of the property received is more than the fair market value of the property given. By holding that the fair market value of the property received in a taxable exchange is the cost basis, the above discrepancy is avoided and the basis of the property received will equal the adjusted basis of the property given plus any gain recognized, or that should have been recognized, or minus any loss recognized, or that should have been recognized. We are in accord with this view. Cf. Lev. Bui. 55-757, 1955-2 C.B. 557. It is true that in the Philadelphia Parle case itself, there is some indication that the interest there received by the taxpayer, a 10-year extension of a railway franchise, may not have had an ascertainable fair market value, so it was specifically provided in that case that the fair market value of the interest given up, the ownership of a bridge, might be presumed to be the value of the extended franchise in the arm’s-length transaction there under consideration. Here, there is no such problem. Here, the hotel property interest acquired may be valued as readily as the interest in the Piedmont residence and personalty which was relinquished. Petitioners have presented testimony of two expert witnesses in regard to the value of the hotel property on April 1', 1941. On the basis of such testimony and the other evidence of record, we have made findings that the subject property had a total fair market value of $220,000 on the date of the exchange, consisting of the building worth $60,000 and the land worth $160,000. Thus, a four-fifteenths interest in this property on the exchange date had a fair market value of approximately $58,666.67. This basis must, of course, be adjusted for depreciation of the building from April 1, 1941, until the condemnation sale in 1951. We do not understand that there is any dispute between the parties with respect to such adjustment, and it may be made in the Rule 50 computation. Decision will be entered under Rule 50. Nor is there any dispute that the amount received by Halsey must be reduced by his $11,377.40 aliquot share of the litigation expenses. Other adjustments to land and building, based upon certain facts stipulated by the parties, are not In dispute herein, and will be given effect in the decision to be entered under Rule 50. See infra. In separate litigation involving Chester, the $200,000 figure used by him was accepted by this Court. Chester N. Williams, T.C. Memo. 1960—275. However,, since the facts in that case appear to have been fully stipulated the Court did not have the benefit of the expert testimony presented to us in the present case, and it plainly indicated that it was with skepticism that it accepted the $200,000 valuation in the circumstances presented by the record before it. The Commissioner argues on brief, and petitioners do not disagree, that the depreciation adjustments should be made from the date of the termination of the lease in 1932 rather than from the date of the father’s death in 1926. Accordingly, since there is no issue between the parties in this regard, it becomes unnecessary for us to consider whether cases like Schubert v. Commissioner, 286 F. 2d 573 (C.A. 4), affirming 33 T.C. 1048, certiorari denied 366 U.S. 960, are applicable here.