Estate of Rochester H. Rogers, deceased, Lois S. Rogers and Marine Midland Trust Company, co-executors, and Lois S. Rogers, surviving spouse v. Commissioner.
Estate of Rogers v. Commissioner
Docket No. 2935-67.
United States Tax Court
T.C. Memo 1970-192; 1970 Tax Ct. Memo LEXIS 166; 29 T.C.M. (CCH) 869; T.C.M. (RIA) 70192; July 8, 1970, Filed Sydney R. Rubin, Suite 404, Central Trust Bldg., 44 Exchange St.,Rochester, N. Y., for the petitioners. John D. Steele, Jr., for the respondent. DAWSON
Memorandum Findings of Fact and Opinion DAWSON, Judge: Respondent determined the following Federal income tax deficiencies *167 against the petitioners: Taxable Year
Deficiency
1963
$1,811.21
1964
3,693.24
Several adjustments have been conceded by the petitioners. One issue is presented for decision: What is the unadjusted basis of certain real property, purchased in 1946, in the hands of petitioner Lois S. Rogers for the purpose of determining the gain or loss realized upon the sale of the property in 1963? Findings of Fact All of the facts are stipulated. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference and are adopted as our findings. The pertinent facts are summarized below. Rochester H. Rogers, the decedent, died testate, a resident of the City of Rochester, New York, on October 3, 1965. His Last Will and Testament was duly admitted to probate by the Surrogate's Court of Monroe County, and Marine Midland Trust Company (a banking corporation organized and existing under the laws of the State of New York) and Lois S. Rogers, the decedent's surviving spouse, were duly appointed and qualified as executors of the decedent's estate, and are still acting in that capacity. The legal residence of Lois S. Rogers at the time the petitioner *168 herein was filed was 71 Argyle Street, Rochester, New York. For a number of years prior to 1946, Lois S. Rogers (herein called either Lois or pettioner) owned commercial real property at the corner of Monroe Avenue and Rutgers Street in the City of Rochester, New York. On January 7, 1946, Lois sold and conveyed that property to Suskro Associates, Inc., for a total purchase price of $165,000, comprised as follows: By purchaser's assumption of first mortgage held by S. Rae
$ 45,025
Hic- kok in principal amount of
By purchase money second mort- gage given back to Lois
100,000
By cash at closing
19,975
$165,000
On her separate Federal income tax return for the year 1946, Lois reported the sale as follows: 870 Gross Sale
Expense of
Improve-
Deprecia-
Price
Cost
sale
ments
tion
Loss
$165,000
$204,825.99
$8,891
$4,806
$8,842.81
$44,680.18 The purchase money second mortgage (herein referred to as the Monroe-Rutgers mortgage) was in the principal amount of $100,000 and provided for the payment of $500 on principal quarter-annually, with interest payable at the rate of 4% per annum, and with the entire obligation to *169 become due and payable fifteen years after the date made. On May 17, 1946, Lois purchased from Realworth Properties, Inc., a parcel of commercial real estate located at 371 Main Street East in the City of Rochester, New York, and known as the "Mohican market" (herein referred to as the Mohican property) for the stated price of $105,000. Rochester H. Rogers signed the purchase offer as agent for Lois, and Reuben Goldman, as attorney and officer of Realworth Properties, Inc., signed the acceptance as attorney on behalf of the seller. Both Rochester H. Rogers and Reuben Goldman had previously had substantial experience in the purchase and sale of real estate and dealt at arm's length with each other in the above transaction. In payment of the stated $105,000 purchase price for the Mohican property, Lois received the conveyance of the property subject to a first mortgage of $60,000 held by Lincoln-Alliance Bank and Trust Co., and assigned to the seller, Realworth Properties, Inc., the Monroe-Rutgers second mortgage. While the face value of the second mortgage at the time it was assigned was $99,500, the sales contract provided: "Value of mortgage $45,000" and "PURCHASE PRICE: $105,000." *170 Lois did not report or claim a loss on her 1946 Federal income tax return with respect to her transfer of the Monroe-Rutgers mortgage to Realworth Properties, Inc. Lois relied on her husband, Rochester, with respect to all aspects of the transaction involving her purchase of the Mohican property, and she has no knowledge or recollection of the reasons for which the value of the Monroe-Rutgers mortgage was stated in the Purchase Offer and Acceptance as being $45,000 and the purchase price was stated therein as being $105,000. Reuben Goldman, attorney for the seller, Realworth Properties, Inc., does not recall "the basis or circumstances which caused a value of only $45,000 to be assigned to said mortgage" in the contract. Following the acquisition of the Monroe-Rutgers mortgage by Realworth Properties, Inc., on May 17, 1946, the mortgage was assigned and transferred, and had a principal balance at the time of each transfer, as set forth below: May 27, 1946.
Realworth to Monwek Realty Corp. Principal balance $99,500.
July 18, 1946.
Monwek Realty Corp. to Charles Marshall. Principal balance
$99,000.
Aug. 2, 1946.
Charles Marshall to Lincoln Ro- chester Trust Company.
Princi- pal balance $98,500.
May 7, 1948.
Lincoln Rochester Trust Com- pany to Charles Marshall.Prin-
cipal balance $95,500.
May 7, 1948.
Charles Marshall to Marjorie Liebschutz, Natalie F. Galen
and Alberta Firestone. Principal bal- ance $95,500.
*171 The price and terms by which the Monroe-Rutgers mortgage was assigned, as set forth above, are not now ascertainable, except for the assignment of May 7, 1948, by Charles Marshall to Marjorie Liebschutz, Natalie F. Galen and Alberta Firestone. Those three individuals purchased the Monroe-Rutgers mortgage on May 7, 1948, for $72,500, the principal balance thereof then being $95,500. That purchase of the Monroe-Rutgers mortgage was negotiated and handled for the purchasers by Philip M. Liebschutz, an attorney in Rochester, New York, who is and was at that time president of Columbia Banking, Savings and Loan Association in the City of Rochester. Marjorie Liebschutz is the wife of Philip M. Liebschutz. Natalie F. Galen and Alberta Firestone were sisters of Marjorie Liebschutz. At the time of such purchase, Philip M. Liebschutz had substantial experience in the placing and purchases of mortgages on commercial properties in the City of Rochester, New York. On February 24, 1961, the balance of the Monroe-Rutgers mortgage, then being $70,000, was paid in full, and the mortgage was discharged of record. On October 2, 1947, Suskro Associates, Inc., transferred the property at the corner *172 of Monroe Avenue and Rutgers Street to Monroe-Rutgers, Inc. The deed of 871 conveyance recited that the transfer was made subject to a first mortgage then having a principal balance of $38,525, and subject to the Monroe-Rutgers mortgage then having a principal balance of $97,000. By deed of conveyance dated January 15, 1959, Monroe-Rutgers, Inc., transferred and conveyed the property at Monroe Avenue and Rutgers Street to Mangurian Warehouses, Inc. The deed recited that the conveyance was made subject to a first mortgage then having a principal balance of $27,275, and subject to the Monroe-Rutgers mortgage then having a principal balance of $74,500. Henry F. Leonardo is an attorney at law and is Supervising Field Assessor of the Bureau of Assessments of the City of Rochester, and has been continuously employed by the Bureau of Assessments since prior to 1941. In his capacity as an employee of the Bureau of Assessments, he appraised the Mohican property in 1941 and again in 1946. For real estate tax purposes for the fiscal year 1946, the Mohican property was assessed at $136,000, of which the assessed value of the land was $102,300. The equalization rate for that year was 95%, *173 and the full value of the property for the year 1946 was deemed by the Bureau of Assessments of the City of Rochester to be approximately $143,157. The Mohican property was desirable property in 1946. It was rented to the Mohican Company at a rental of $12,600 per year, and produced income from other sources amounting to about $400 a year. At that time, Rochester H. Rogers was optimistic concerning the future prospects for the property and expected that it would appreciate substantially in value. Instead, after 1946, there was a general decline in values in the area in which this property was located, as a result of the advent of large shopping plazas, super department stores, increasing tax rates, and flight of business, industry and population to the suburbs. On October 1, 1963, Lois sold the Mohican property for $114,500. The expenses of sale totaled $6,900.95. The first payment on the purchase price was to be made on or about October 1, 1968. By a letter attached to the 1963 tax return, Rochester h. Rogers and Lois S. Rogers validly elected to have any capital gain resulting from said sale reported on the installment basis, and the respondent acknowledges that no portion of the *174 gain, if any, arising from said sale is taxable in either of the years involved in this proceeding. For purposes of determining Lois' cost basis for the Mohican property at the time of the sale on October 1, 1963, the following items and amounts are correct: Improvements
$ 2,675.00
Commission
900.00
Miscellaneous costs
61.75
Depreciation (1946-1963)
20,531.24
Ultimate Findings 1. The unadjusted basis of the Mohican property on May 17, 1946, was $105,000. 2. Petitioner realized a gain in 1963 on the sale of the Mohican property in the amount of $19,493.54, computed as follows: Purchase price
$105,000.00
Add: Improvements
2,675.00
Commissions
900.00
Miscellaneous costs
61.75
Total cost
$108,636.75
Less: Depreciation 1946-63
(20,531.24)
Adjusted Basis
$88,105.51
Selling price
$114,500.00
Less: Expenses of sale
6,900.95
Net selling price
$107,599.05
Less: Adjusted basis
(88,105.51)
Gain
$19,493.54 Opinion The only issue before us concerns the unadjusted basis of the Mohican property, which petitioner Lois S. Rogers acquired in 1946 through a taxable exchange. The facts are not complicated: The stated price of the *175 property was $105,000; petitioner assumed a mortgage of $60,000 and transferred to the seller a second mortgage which she held; this second mortgage (Monroe-Rutgers mortgage) had a face value of $100,000, a basis to her of $99,500, and a stated value of $45,000; two years later the Monroe-Rutgers mortgage was transferred for $72,500, and eventually it was paid in full; in 1946 the Mohican property was assessed for real estate tax purposes at $136,000 (95% appraisal value). Respondent contends that petitioner's initial cost of the Mohican property was $105,000, that her cost basis for determining gain or loss on its sale was $88,105.51, and that she realized a gain on the sale of $19,493.54. Petitioner, on the other hand, contends that her initial cost of the Mohican property was $159,500, comprised of the assumed first mortgage of $60,000, and the unpaid principal balance of $99,500 on the Monroe-Rutgers mortgage which she assigned to Realworth Properties, Inc., as part of the purchase price. Thus, she asserts that her 872 cost basis for determining gain or loss on the sale of the Mohican property was $142,605.51, that the net selling price, after expenses of sale, was $107,599.05, *176 and that she realized a loss on the sale of $35,006.46. Section 1001, Internal Revenue Code of 1954, defines the gain from "the sale or other disposition of property" as "the excess of the amount realized therefrom over the adjusted basis provided in section 1011" and loss as "the excess of adjusted basis * * * over the amount realized." It then defines the "amount realized from the sale or disposition of property" as "the sum of any money received plus the fair market value of the property (other than money) received." In section 1011 the "adjusted basis for determining the gain or loss from the sale or other disposition of property" is declared to be the basis determined under section 1012 adjusted as provided in section 1016. Under section 1012 the basis of property acquired by purchase is its cost. And section 1.1012-1(a), Income Tax Regs., provides that "cost is the amount paid for the property in cash or other property." Property acquired in a taxable exchange takes a basis equal to its fair market value at the time of the exchange. Halsey L. Williams, 37 T.C. 1099 (1962); Philadelphia Park Amusement Co. v. United States, 126 F. Supp. 184 (Ct. Cl. 1954); *177 Mary Kavanaugh Feathers, 8 T.C. 376 (1947). On this record we think petitioner has not established that the fair market value of the Mohican property exceeded the cost stated in her purchase agreement with Realworth Properties, Inc. It is stipulated that the stated cost of $105,000 was reached through arm's-length bargaining. That being so, the petitioner must offer "strong proof * * * in order to overcome that declaration." See and compare Ullman v. Commissioner, 264 F. 2d 305, 308 (C.A. 2, 1959); J. Leonard Schmitz, 51 T.C. 306 (1968), on appeal (C.A. 9). Although those cases involved allocations to noncompete covenants, we regard the rule as equally valid in determining basis in a taxable exchange. See Seas Shipping Company v. Commissioner, 371 F. 2d 528 (C.A. 2, 1967), affirming a Memorandum Opinion of this Court. Petitioner has shown that in 1946 the property was assessed for real estate tax purposes at $136,000 upon a valuation of $143,157. In 1942 it had been assessed at $146,000 upon a valuation of $171,764. After 1946 the assessment did not change, although the property (according to the assessor's statement) declined *178 further in value until the mid or late 1950's. In view of the apparent downward inflexibility of the assessment valuation, we do not regard it as "strong proof" sufficient to overcome the purchase agreement which, by itself, "is very persuasive evidence of value." Seas Shipping Company v. Commissioner, supra at 532. Petitioner has also shown that the Monroe-Rutgers mortgage traded for $72,500 two years after petitioner exchanged it for a stated price of $45,000. We think this later transaction offers only slight evidence of what the mortgage was worth in 1946. The value of the mortgage does not establish with any degree of certainty the value of the Mohican property. See Philadelphia Park Amusement Co. v. United States, supra.The Court of Appeals for the Second Circuit has characterized the barter-equation method of valuation a "bootstrap operation" since the two sides of the exchange may not be equal in value and "there is usually no logical reason to start with one side rather than the other." Seas Shipping Company v. Commissioner, supra at 529-530. Petitioner argues that a taxpayer may go beyond what appears on the face of an agreement, *179 just as the Commissioner may do so. We do not disagree. See J. Leonard Schmitz, supra at 317. However, the socalled "two-way street" seems to run downhill for the Commissioner and uphill for the taxpayer. The Commissioner must be permitted to go beyond mere form to substance in order to protect the revenue; but taxpayers have the opportunity at the outset to choose the most advantageous arrangement. Compare Commissioner v. Danielson, 378 F. 2d 771, 774-75 (C.A. 3, 1967). While this Court and several Courts of Appeals [1] have stopped short of the position (the one-way street) taken by the Third Circuit in the Danielson case, the 873 difference between "strong proof" and proof of "unenforceability" may not be great. What constitutes "strong proof" has not been defined by the courts which have used the phrase. But we perceive the import of the decisions is that the "strong proof" called for would be tantamount to proof that a subterfuge was committed during the negotiations. In virtually every case of this type one party or both will consider the tax results of the agreement and adjust his terms accordingly. Apparently that happened here. To permit the petitioner *180 to attack now the agreed purchase price of $105,000, which allocated $60,000 to the assumed mortgage and $45,000 to the Monroe-Rutgers mortgage, would in essence grant her a unilateral reformation of the contract and a present tax advantage. We find nothing in the tax statutes or in any opinion of this Court which on these facts would justify our enriching the petitioner by allowing her to remake a closed and completed transaction in 1946 [2] to her own tax advantage in 1963. Accordingly, we conclude that the fair market value of the Mohican property on *181 May 17, 1946, was $105,000, as stated in the purchase agreement. It follows that the unadjusted basis of the property is likewise $105,000. Decision will be entered for the respondent. Footnotes
1. See Ullman v. Commissioner, 264 F. 2d 305 (C.A. 2, 1959); Barran v. Commissioner, 334 F. 2d 58 (C.A. 5, 1964); Montesi v. Commissioner, 340 F. 2d 97 (C.A. 6, 1965); Rogers v. United States, 290 F. 2d 501 (C.A. 9, 1961); and Hamlin's Trust v. Commissioner 209 F. 2d 761↩ (C.A. 10, 1954). 2. If, as petitioner urges, the Monroe-Rutgers mortgage had a value of $99,500 in 1946, it would appear that she should have claimed a loss in that year of the difference between her basis in such mortgage and the value assigned to it in the purchase agreement of May 17, 1946.↩