C. D. JOHNSON LUMBER CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 8774.   Promulgated March 17, 1949.

*Charles E. McCulloch, Esq., Fletcher Rockwood, Esq., Thomas B. Stoel, Esq.,* and *Eric P. Van, C. P. A.,* for the petitioner.
*John H. Pigg, Esq.,* for the respondent.

358

### OPINION.

JOHNSON, *Judge*: Petitioner assails the Commissioner's computation of depreciation and depletion deductions for the fiscal years 1940 and 1941 by the use of cost bases which reflect the foreclosure bids and contract prices (with some apportioning adjustments) for properties of Pacific which it acquired at the time of organization. It contends that the properties' cost to it was an over-all price, consisting of cash paid, obligations assumed, and all its own stock issued pursuant to the reorganization plan, and that the stock's value is determinable by reference to the fair market value of the properties on December 1, 1935, the date of acquisition. The parties have stipulated the fair market value of the several groups of assets on that date, subject to respondent's objection that such evidence is immaterial to any issue properly raised. Respondent contends that petitioner's bases for the properties are *res judicata*, and that his determination in respect thereof should be sustained on this account without review. Of the 96 pages of respondent's brief, only 5 or 6 are devoted to questions other than the application of the doctrine of *res judicata*. We shall consider that contention first.

(1) Petitioner was formed to acquire the assets and continue the business of Pacific which was adjudged insolvent in February 1931. A receiver continued its operation, however, and, after protracted negotiations, its officers procured the agreement of shareholders,

creditors, and other interested parties to a plan of reorganization which received court approval on January 9, 1935, and was carried out in detail by December 1. Pursuant to this plan petitioner acquired properties, assumed liabilities, and issued all its shares to Pacific's former bondholders, preferred shareholders, and manager. For 1936, as for the years in issue, the Commissioner determined the amounts deductible as depletion and depreciation on properties so acquired by using as basis a cost to petitioner which he computed by reference to foreclosure bids and contract figures. Petitioner contested this action in a proceeding before the Board of Tax Appeals, contending that it acquired the properties by tax-free exchanges in the course of a statutory reorganization, and that its bases were those of Pacific. Holding that there was no statutory reorganization and that petitioner was not entitled to Pacific's bases, the Board of Tax Appeals sustained the Commissioner's determinations of deficiency, *C. D. Johnson Lumber Corporation*, 47 B. T. A. 873, and on that decision respondent now bases his plea that the present issue is *res judicata.*

In a recent opinion of the Supreme Court, *Commissioner* v. *Sunnen*, 333 U. S. 591, Justice Murphy expounded the doctrine of *res judicata*, particularly with reference to issues of tax law similar to those here involved. Having noted that in general the judgment of a competent court on the merits of a cause of action binds the parties and their privies:

* * * "not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose." *Cromwell* v. *County of Sac*, 94 U. S. 351, 352 * * *,

he carefully distinguished the effect of such judgment on a second action between the same parties based upon a different cause or demand, saying:

* * * In this situation, the judgment in the prior action operates as an estoppel, not as to matters which might have been litigated and determined, but "only as to those matters in issue or points controverted, upon the determination of which the finding or verdict was rendered." *Cromwell* v. *County of Sac*, *supra*, 353. And see *Russell* v. *Place*, 94 U. S. 606; *Southern Pacific R. Co.* v. *United States*, 168 U. S. 1; *Mercoid Corp.* v. *Mid-Continent Co.*, 320 U. S. 661, 671. Since the cause of action involved in the second proceeding is not swallowed by the judgment in the prior suit, the parties are free to litigate points which were not at issue in the first proceeding, even though such points might have been tendered and decided at that time. * * *

Such is the situation, he added, if a taxpayer raises an issue similar to one already adjudicated in a proceeding brought by him in respect of a different tax year. In such event:

\* \* \* the prior judgment acts as a collateral estoppel only as to those matters in the second proceeding which were actually presented and determined in the first suit. \* \* \*

\* \* \* \* \* \* \*

\* \* \* If the legal matters determined in the earlier case differ from those raised in the second case, collateral estoppel has no bearing on the situation. See *Travelers Ins. Co.* v. *Commissioner*, 161 Fed. (2d) 93. \* \* \*

As this proceeding involves depreciation and depletion bases for a year different from that involved in the prior case, respondent must rely on collateral estoppel as a bar to further judicial review. Accepting this approach, he argues primarily that the prior issue was the *basis* of the same properties here involved; that this basis, once adjudicated, is a constant factor for succeeding tax years; and that, since in the prior holding the amount of basis was implicitly a part of the decision, all elements in its computation were necessarily part and parcel of the issue decided. He argues alternatively that, besides assigning error in the Commissioner's failure to recognize petitioner's acquisition by tax-free exchanges and the consequent right to use of Pacific's basis, petitioner expressly put in issue in the prior proceeding the value of the properties at acquisition and offered some evidence of such value in support of a greater basis than that determined.

As we construe the opinion in *Sunnen* and other pertinent precedents, the application of the doctrine of collateral estoppel to bar review of the issue now raised depends upon the answers to two questions: (1) Does a claim for increased basis founded solely on an asserted right to use of a predecessor owner's cost put in issue the factors entering into a determination purporting to reflect the claimant's cost? (2) If it does not, were such factors put in issue by separate assignment or otherwise in petitioner's prior proceeding?

The first question has been answered in the negative by decisions involving factual situations which render them singularly pertinent. A claim for increased basis may be founded on more than one theory of right, and each such theory, when separately presented for court review, constitutes a separate issue. Such was the holding of the Court of Claims in *Harvey Coal Corporation* v. *United States*, 92 Ct. Cls. 186; 35 Fed. Supp. 756. There it appeared that the plaintiff in a prior proceeding had attacked a determined basis, computed as cost to it, on the theory that it was entitled to use as basis the assets' cost to a predecessor owner, 24 B. T. A. 793. After an adverse decision by the Board of Tax Appeals the plaintiff attacked the same basis, used in computing the depreciation deduction for a subsequent year, on the theory that the cost to it was determined in an insufficient amount. In rejecting the Commissioner's plea of *res judicata*, the Court of Claims reasoned that the Board's judgment was conclusive only as to "questions presented and decided," and, therefore, did not

preclude the plaintiff in a second action from furnishing additional evidence to support the new demand. It reasoned that the Board had held under the issue previously raised that there was no reorganization, and hence:

* * * The plaintiff, having taken a different view of the transaction, had introduced no such proof [of cost to itself] and, therefore, and for this reason only, its claim for depreciation was denied. It would be manifestly inequitable to hold that under such circumstances this would preclude it from introducing proof of such cost in a suit to recover taxes for later years.

Conversely, the Circuit Court of Appeals for the First Circuit held in *Pelham Hall Co.* v. *Hassett*, 147 Fed. (2d) 63, that an adjudication of the taxpayer's cost as a property's basis was no bar to a subsequent attack on the same basis under the theory that the taxpayer was entitled to use of the predecessor owner's cost. The court expressly based its holding on the ground that:

* * * the question whether the transaction was a tax-free reorganization, as affecting the determination of the taxpayer's proper basis for depreciation, was not "actually litigated and determined" in *Pelham Hall Co.* v. *Commissioner* 33 B. T. A., 329, and therefore that the taxpayer was free to press this issue as the foundation of a claim for refund of an alleged overpayment for the tax year now in question.

While these two decisions were rendered prior to the decision in *Commissioner* v. *Sunnen, supra*, their holdings and rationale seem in harmony with the views of the Supreme Court. Justice Murphy stressed that:

* * * where two cases involve income taxes in different taxable years, collateral estoppel must be used with its limitations carefully in mind so as to avoid injustice. It must be confined to situations where the matter raised in the second suit is identical in all respects with that decided in the first proceeding and where the controlling facts and applicable legal rules remain unchanged. *Tait* v. *Western Md. R. Co., supra* [289 U. S. 620]. If the legal matters determined in the earlier case differ from those raised in the second case, collateral estoppel has no bearing on the situation. See *Travelers Ins. Co.* v. *Commissioner*, 161 Fed. (2d) 93. * * *

We are of opinion that it has no bearing on the situation here in so far as the prior proceeding involved the effect of the reorganization on petitioner's basis.

There remains for consideration, however, whether or not the petitioner's cost of the assets was an issue specifically raised and decided in the prior case. In addition to his contention that such an issue was necessarily included in a claim for increased basis, respondent also argues that it was raised by a separate assignment, which petitioner's counsel mentioned at the trial and implicitly recognized as raised by his tender of some evidence on the subject—admittedly meager evidence. After a careful review of the record in the prior proceeding we can not agree. The final assignment of the petition,

it is true, refers to the value of the properties when petitioner acquired them. But the value determined is not attacked; only its *allocation* among the several properties is questioned. In their introductory remarks counsel for each party stated his concept of the issues, and petitioner's counsel asserted that, even if his primary contention should be sustained, there would still remain the question of how to value the properties for purposes of depreciation and depletion; later, that petitioner was not bound by bids in valuing the properties. Respondent stresses these statements as supporting his contention that the value of the assets at acquisition was previously in issue as a basis factor.

We have analytically reviewed the protracted opening statements, and, although somewhat loosely worded, the remarks stressed would seem to refer to the final assignment of error in allocation of the amount determined as total basis among the several assets rather than to the total figure itself, which petitioner now attacks. In any event, an issue can be raised only by proper assignment in a petition or amendment thereto, not by reference in the opening statement of petitioner's counsel. This is *a fortiori* true if, as here, respondent's counsel denies that any such error has been put in issue and later objects to proffered evidence on the ground that it relates to the alleged error not properly raised.

We are not, however, solely dependent upon a present construction of the petition and counsel's statements. After the hearing of the prior proceeding petitioner tendered an amended petition in which the Commissioner's failure to use the fair market value of the assets on December 1, 1935, as basis was clearly assigned as error, and made a motion to reopen the case for the admission of testimony regarding such fair market value. The amended petition was rejected and the motion denied. After the Board's opinion was rendered, petitioner again tendered the amended petition and motion, and moved further for a reconsideration and rehearing. The Board denied these motions for the stated reason that "there was no issue raised or tried as to amount of petitioner's cost basis." This denial was consonant with the statement in its opinion that no error was raised "except upon the ground of a statutory reorganization."

We are of opinion and hold that the error assigned in this proceeding relating to the cost of petitioner's assets as basis presents an issue distinct from that raised and decided in the prior proceeding, and that petitioner is not collaterally estopped from raising such issue here.

(2) In assailing the amounts determined as its cost of the several assets, petitioner charges respondent with improperly using the bids at the receiver's sales and the contract prices, which amounts, it argues, were prearranged arbitrarily to fit into the unitary plan for reorgani-

zation of the business and hence lack substantive significance. It contends that the group of Pacific's assets which it acquired should be treated as a unit, and that the consideration paid should be held applicable to them as a whole; that this consideration consisted of cash, the assumption of obligations, and the issuance of all its shares; and that, as the fair market value of the shares can only be measured by the fair market value of the assets, less cash and obligations, the stipulated value of such assets should be accepted as its cost, and hence its basis. Mathematically, of course, the decrease in share value because of the cash and assumed obligations would be, under this theory, exactly matched by the addition of these amounts to share value as elements of cost. The parties have stipulated the total value of the acquired assets on December 1, 1935, to be $4,346,075.97, and have allocated it among the several constituent groups. The Commissioner determined that in petitioner's hands the total cost or bases of the assets aggregated $3,011,312.75.

There is ample precedent to support petitioner's proposed method of basis computation if the facts shown warrant its application. It is settled that the cost of property acquired for shares of stock is the fair market value of the shares, and if, as here, a corporation's entire stock is issued for the acquisition the value of the properties acquired, with the addition of any cash paid and obligations assumed, may be accepted as a measure of the value of the shares and hence of the cost of the properties, in the absence of sales or other evidence of share value. *Champlin Refining Co.* v. *Commissioner* (C. C. A., 10th Cir.), 123 Fed. (2d) 202; *Four Twelve West Sixth Co.*, 7 T. C. 26; *Stollberg Hardware Co.*, 46 B. T. A. 788; *Amerex Holding Corporation*, 37 B. T. A. 1169; affd. (C. C. A., 2d Cir.), 117 Fed. (2d) 1009; certiorari denied, 314 U. S. 620. It is likewise recognized that a bid or contract price is not necessarily cost if circumstances vest the figure with a purely arbitrary or perfunctory character, *Helvering* v. *New President Corporation* (C. C. A., 8th Cir.), 122 Fed. (2d) 92; *La Arcada Bondholders Committee*, 35 B. T. A. 80; *Suncrest Lumber Co.*, 25 B. T. A. 375, and if the total consideration is paid for a mixed aggregate of assets, its allocation among the several properties acquired should be based upon the relative value of each item to the value of the whole. Cf. *Nathan Blum*, 5 T. C. 702; *Clifford Hemphill*, 25 B. T. A. 1351.

The facts established justify an application of the above principles. In brief outline, petitioner acquired Pacific's assets under the reorganization plan and, in so doing, issued all of its stock, as prearranged, to the bondholders' corporation, Pacific's preferred shareholders, and Johnson. It assumed the payments of delinquent taxes on the properties and Pacific's unpaid debts in the amounts of $106,663.23 and $58,588.14, respectively. It bought from U. S. Spruce the properties

covered by the canceled contract for a promise to pay $436,108.33. It bought from the bondholders' corporation the assets mortgaged to secure the bonds for its obligation to pay in future installments $1,669,100, a figure equal to the difference between the par value of its preferred shares issued to the bondholders' corporation ($629,100) and the unpaid principal of the bonds outstanding ($2,298,200). It leased the railroads from the bank which had acquired them by foreclosure. And it bought from the receiver Pacific's unencumbered assets for a bid price of $700,000, of which $500,000 was satisfied by deficiency judgments against it which the judgment creditors had assigned it pursuant to the plan, and the remainder was paid with the proceeds of a bank loan. The series of preplanned transactions also involved the issuance of 63,000 class B shares to Johnson; the transfers and use of deficiency judgments under the foreclosure proceedings and of redemption rights in such manner as to render the steps taken conclusive and definitive. For these transfers no specific consideration was recited.

Such a background well supports the testimony of petitioner's witnesses that the express price or consideration for any specific asset or group of assets was an arbitrary figure lacking in probative value as an index of cost. Shareholders, bondholders, creditors, officers, and others having an interest in the most advantageous economic salvage of Pacific's assets and business agreed among themselves on what reorganization plan would be most beneficial; on the division of rights and interests that seemed most just; and on the contracts, sales, and other implementing transactions which would best facilitate the carrying out of such a plan in a definitive manner. All of the steps were integrated as parts of a whole, and the ensuing bids at the receiver's auctions and recited considerations in the sale contracts merely gave effect to the general agreement.

Of course outside parties could have bid at the auctions and outside offers or the possibility of such offers could have affected the recited contract considerations. But, in here rejecting these figures as conclusive of cost, we are influenced not only by the prior agreement fixing them, but also by the fact that in the general scheme there were transfers and relinquishments of rights for which no specific consideration was provided.

Those concerned rationally believed that retention of the whole group of assets and the managing personnel in a continuing unified business would give to the properties a greater value than they would have on dispersion. Hence the free use made of deficiency judgments and redemption rights and the transfer of the 63,000 class B common shares to manager Johnson without consideration. The true costs of the properties comprise these factors and others which are not reflected in the bid or contract prices. No isolated transaction here

represents the meeting of minds about a specific asset or the price agreed on for its purchase. Each specific transaction is rather one of a series of payments to be made and one of a series of assets to be transferred in a general division and settlement. Under such circumstances the isolated price of an asset, while literally connected with that asset, becomes merely an item of computation in the total price paid for all assets.

There is no itemized break-down of the Commissioner's determination of bases, and, as noted in the opinion rendered in the prior proceeding, 47 B. T. A. 873, 882, his method of computation does not clearly appear. But petitioner attacks the use of bids and contract prices as cost, and respondent defends the use of them, even stressing that shares were issued only for the properties mortgaged to secure Pacific's bonds, and arguing that for this reason share value has no possible effect on the bases of other assets. This contention becomes irrevelant if the total consideration is to be deemed paid for the aggregate assets, and is to be allocated as cost among such assets without a nice regard for the parties' recitations and formalities. We are of opinion that the character of the transactions carried out pursuant to the reorganization plan requires such an allocation, and we therefore find and hold that petitioner's cost and basis is the stipulated value of the assets, of $4,346,075.97, allocable among the several groups in the amounts also stipulated. This figure, it will be noted, represents the value of the shares plus the cash paid and obligations assumed.

Other issues raised in the petition were abandoned.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

DISNEY, *J.*, dissenting: In this dissent I will confine myself to the matter of ascertainment of cost of those properties which were purchased from the receiver and those which were purchased from creditors who had acquired them at foreclosure sale. I am unable to agree that the cost of such properties was anything other than the amount paid therefor. Under the statute the basis of property is, in general, its cost. Though there was a reorganization and though in connection therewith the petitioner issued stock and assumed obligations, it seems to me clear that there were certain properties which it was unable to acquire by that procedure, that it was necessary to purchase them, and I can see no reason to ascribe to such properties any effect from the fact of issuance of stock and assumption of obligations. Plainly the procedure of issuing stock and assuming obligations was not sufficient to acquire the other properties. They had to be purchased. They were in reality outside the pale of the reorganization

through the stock obligations assumption operation. Quantitatively such purchased properties were large. I note that the total value of the acquired assets is stipulated to be $4,346,075.97. The unencumbered property purchased from the receiver was $700,000, while U. S. Spruce was paid about $436,000 for the property covered by the canceled contract. I would not permit the mere fact of a general reorganization procedure, under which these properties could not be acquired except by purchase, in part at auction where others might have bid, to overthrow the usual rule that basis is cost. I, therefore, respectfully dissent.

TURNER and HARRON, *JJ.*, agree with this dissent.