Burton S. Ostrow and Sondra G. Ostrow v. Commissioner.
Ostrow v. Commissioner
Docket No. 55026.
United States Tax Court
T.C. Memo 1956-183; 1956 Tax Ct. Memo LEXIS 109; 15 T.C.M. (CCH) 957; T.C.M. (RIA) 56183; August 8, 1956
*109 Milton I. Baldinger, Esq., Wyatt Building, Washington, D.C., for the petitioners. A. Russell Beazley, Jr., Esq., for the respondent. MULRONEY Memorandum Findings of Fact and Opinion The respondent determined a deficiency in petitioners' income tax in the amount of $1,486.32 for the year 1950. The deficiency was based upon an understatement of dividends received by the petitioners from the Avondale Building Corporation, and it was conceded by the petitioners at the hearing that there was an understatement in the amount computed by the respondent. A timely claim for refund was filed on July 21, 1953 by the petitioners claiming an overpayment of $1,714.18 in income tax for the year 1950. No action has been taken by the respondent in connection with this claim for refund. The sole issue is whether a trust, of which the petitioners are beneficiaries, is entitled to an additional deduction for depreciation on a one-fourth undivided interest in certain real property acquired by it in 1948, which turns upon whether the trust was a member of an association taxable as a corporation, or whether it was one of several joint tenants in the ownership and operation of the real *110 estate in question. Findings of Fact Burton S. Ostrow and his wife, Sondra, are residents of Severna Park, Maryland. They filed a joint income tax return for the year 1950 with the then collector of internal revenue for the district of Maryland. Burton S. Ostrow will hereinafter be called the petitioner. In 1950 the petitioner, his brother, Alvin P. Ostrow, and his sister, Joan C. Ostrow, were beneficiaries of a trust (hereinafter called the Ostrow Trust) created March 26, 1941, with Leopold V. Freudberg and Mark Winkler as trustees. Petitioner was a 32 per cent beneficiary. In 1942 Commonwealth Properties, Inc., a Delaware corporation formed for the purpose of erecting an office building in Washington, D.C., was dissolved and the completed building known as the Commonwealth Building, was distributed to the various stockholders as tenants in common as follows: Ostrow Trust
35 per cent
Glassman Trust
35 per cent
Mark Winkler
30 per cent In 1941 an agreement was made by Commonwealth Properties, Inc., designating Mark Winkler as exclusive management agent for a period of 10 years of the Commonwealth Building when it was completed. This agreement was adopted *111 in 1942 by the Ostrow Trust, the Glassman Trust, and Mark Winkler when the assets of Commonwealth Properties, Inc., were distributed to them in that year as tenants in common. Under this operating agreement Mark Winkler, as exclusive agent with compensation fixed at 5 per cent of gross receipts from the operation of the Commonwealth Building, was to render such services as were customarily rendered by agents acting in a similar capacity for office buildings in the District of Columbia. He was charged with the responsibility of obtaining tenants, supervising the employment of all labor required for the operation and maintenance of the premises, collecting rents, signing leases of less than one year, renewing and cancelling any lease, accounting for and holding all receipts as trust funds for the owners, rendering periodic financial statements, and made minor repairs not in excess of $100. He was given authority to institute actions, in his own name or as agent, to dispossess tenants, to recover rents, and to settle, release, or compromise such suits. The owners of the Commonwealth Building, under this same agreement, agreed to save the agent harmless from all damage suits arising from *112 the operation of the Commonwealth Building and also agreed to carry adequate public liability, elevator, steam boiler and other insurance necessary to protect the agent to the same extent such insurance protected the owners. Details of all repairs, alterations, necessary redecorating, or other necessary work, were to be submitted from time to time by the agent to the owners, together with bids for the performance of such work, and, if approved by the owners, contracts for such work would be let in the name of the owners. Leases with tenants for more than one year were signed by each owner of an undivided interest in the Commonwealth Building. This exclusive agency agreement was to be terminated if the owners sold the Commonwealth Building prior to or within five years after the building was completed, in which case a fixed consideration was payable to the agent. Shortly after the liquidation the Ostrow Trust sold a 10 per cent undivided interest in the real property to a third party, and, prior to 1948, the Glassman Trust also disposed of a 10 per cent undivided interest in the property. During the years 1942 through 1947 several other persons acquired undivided interests in the *113 property. None of these transfers of interest affected the continued operation of the Commonwealth Building. In 1948 Ostrow Trust purchased for $80,000 a one-sixteenth undivided interest in the Commonwealth Building from the Glassman Trust, and also acquired, in the same year, a three-sixteenths undivided interest, at a cost of $240,000, from Sylvia Ostrow, mother of the petitioner, who had acquired this three-sixteenths undivided interest in that year from the Glassman Trust in exchange for property owned by her individually. The one-fourth undivided interest in the Commonwealth Building was acquired by the Ostrow Trust subject to all outstanding encumbrances and liens. Payments have been made in full by the Ostrow Trust for the one-fourth undivided interest in the Commonwealth Building acquired by it in 1948. In 1950 the Ostrow Trust owned an undivided one-half interest in the Commonwealth Building. All interests acquired in the Commonwealth Building were subject to a mortgage outstanding. In 1947, by agreement with the mortgagee, the owners of the Commonwealth Building were specifically relieved from any personal liability on the mortgage, and the mortgagee agreed to satisfy its *114 claim from the security only. The books and records for the operation of the Commonwealth Building were kept on the basis of a fiscal year ending January 31 of each year. A partnership return of income, form 1065, was filed with the then collector of internal revenue for the district of Maryland for the fiscal year ended January 31, 1950 for the "Commonwealth Building (A joint venture)." The return was signed by Mark Winkler in the capacity of "partner or member". All the operating expenses were deducted on the partnership return in arriving at net income, including a deduction of $24,111.77 for annual depreciation on the Commonwealth Building based on a cost of $664,348.80. This cost basis was composed of the original cost of the office building when acquired in 1942 and added to the various capital expenditures made through 1950. Payments of interest on the mortgage and payments in reduction of the principal were made under the name of the Commonwealth Building and not by the individual owners. The interest of the various owners was shown on the books of the Commonwealth Building in accounts called "Members' Capital Accounts." A net income of $171,571.76 was shown on the partnership *115 return for the fiscal year ended on January 31, 1950 and it was divided in the following shares: Ostrow Trust
$ 85,785.88
Mark Winkler
34,314.35
Marion W. Meyer
17,157.18
Milton B. and Raye M. Edelson
10,294.31
Selig Miller, Estate of S. Miller
6,862.87
Hilda M. Abramson
6,005.01
Beatrice M. Labovitz
6,005.01
Esther Miller
5,147.15
$171,571.76
The Commonwealth Building was operated in the fiscal year ended January 31, 1950 under an unincorporated business license, and an unincorporated business franchise tax was paid in this period to the District of Columbia. A fiduciary income tax return, form 1041, was filed by the trustees of the Ostrow Trust for the calendar year 1950 with the then collector of internal revenue for the district of Maryland, reporting as income their share of the net income from the Commonwealth Building for the fiscal year ended January 31, 1950. Petitioner reported his share of the income from the operations of the Commonwealth Building for the fiscal year ended January 31, 1950 in the joint return filed by him and his wife for the calendar year 1950. The Commonwealth Building was owned and operated during the years *116 here involved by the several owners, including the Ostrow Trust, as tenants in common. Opinion MULRONEY, Judge: The central issue here is whether petitioner, as a beneficiary of the Ostrow Trust, is entitled to an additional deduction for depreciation of $3,549.13 for the year 1950 on the second undivided one-fourth interest acquired by the Ostrow Trust in the Commonwealth Building in 1948. After the purchase of this second one-fourth interest in 1948, the trust was allowed one-half of the full depreciation allowable each year on the building as shown by the books kept for the operation of the building. In 1950 this depreciation deduction was based on a cost of $664,348.80 which was the original cost basis of the building added to the various capital expenditures made throughout the years. Petitioner's specific claim here is that, in addition to the depreciation already allowed to the trust based upon these original cost figures, there should be granted to the trust an additional deduction for depreciation based upon the trust's purchase price for the second one-fourth interest acquired by it in 1948. According to petitioner's argument the trust should have taken an additional *117 depreciation deduction in the sum of $11,091.03 based on the cost of the second one-fourth interest purchased in 1948. His contention is that his allocable share, as a 32 per cent beneficiary of the trust, should be $3,549.13. It is admitted that the trust paid $320,000 in cash in 1948 for this one-fourth interest and that the interest so purchased was subject to outstanding liens and encumbrances of $147,327.85, making a total cost of $467,327.85 for the one-fourth interest acquired in the land and building. Petitioner's position is based upon the argument that the several owners of undivided interests in the Commonwealth Building are tenants in common and that each tenant in common is entitled to a deduction for depreciation based upon the cost of his individual interest. Respondent argues that the Ostrow Trust is not entitled to an additional deduction in 1950 for the second one-fourth interest purchased by it in 1948 because there is no evidence upon which to base a finding of an increased cost basis for the interest so purchased. Respondent also contends that the trust is not entitled to any additional depreciation because the operation of the building was, for Federal tax purposes, *118 an association taxable as a corporation. We will first discuss the second of the respondent's two arguments. The respondent argues that the Commonwealth Building was operated by an association taxable as a corporation, [1] and that consequently any deductions for depreciation on the office building can be taken only by the association itself and not by the individual members of the association. *119 In Morrissey v. Commissioner, 296 U.S. 344, the Supreme Court indicated several criteria to be considered in determing whether a particular undertaking was so formed and conducted as to make it analogous to a corporation for purposes of Federal taxation. These criteria are (1) whether the entity holds title to the property; (2) whether there is centralized management through representative members of the group; (3) whether there is a continuity of enterprise unaffected by death or withdrawal of the members; (4) whether beneficial interests in the venture may be freely transferred without affecting the continuity of the enterprise; and (5) whether the personal liability of the participants is limited to the property used in the undertaking. Where some of these criteria are met and others are not, it is necessary to determine from all the evidence whether the particular entity more closely resembles a corporation than some other classification. Topeka Insurors, 12 T.C. 428. The Ostrow Trust, together with the other owners, held title to the Commonwealth Building in unequal undivided shares as tenants in common. No entity held title to the property. Each *120 tenant in common could dispose of his undivided interest in the property as he desired. An agreement reached by the tenants in common made Mark Winkler the exclusive management agent of the building for a period of 10 years. His duties were those of an ordinary real estate management firm, securing tenants, signing leases of under one year in duration, handling personnel problems, collecting rents, bringing suit to dispossess tenants or to collect rents, and making periodic accountings to the owners. However, leases of more than one year were signed by each of the tenants in common, and no repairs in excess of $100 could be made by the agent without the prior approval of the owners. Details of all repairs, alterations, and necessary redecorating were to be submitted to the owners by the agent, together with bids for the performance of such work and, if approved, the contracts for such work were to be let in the name of the owners. We do not consider the duties, which are predominantly ministerial in nature, given to the agent under this agreement sufficient to constitute "centralized management" as that term is used in the Morrissey case. In that case, and in cases following its principles, *121 the scope of the duties and powers vested in the managers of the various enterprises were much greater in scope and were clearly analogous to the functions customarily associated with the management of a corporate venture. When we examine the liability of the Ostrow Trust and the other owners of undivided interests in the Commonwealth Building we find that the mortgagee had agreed to look only to the building for satisfaction on the outstanding mortgage indebtedness. However, the various owners were clearly personally liable for other liabilities that could arise in the operation and maintenance of the building, and, in the management contract entered into with Mark Winkler they, the owners, agreed to save the agent harmless from all damage suits arising in connection with services rendered by him under such contract and from liability for injury to any employees or other persons. Contracts for major work done on the building were in the names of the owners. We hold that the operation of the Commonwealth Building in this particular manner, in which the tenants in common operated the building through an exclusive agent, was not the operation of an association taxable as a corporation *122 within the meaning of section 3797(3) of the 1939 Internal Revenue Code. Respondent, in effect, concedes that if we hold the enterprise here is not an association taxable as a corporation, he would not contest the right of a member of this enterprise to receive an additional cost basis if the same be shown. Respondent, however, in denying to the Ostrow Trust an additional deduction for depreciation, contends there is no evidence to show the additional cost of the depreciable portion of the one-fourth interest acquired by the trust in 1948. He is right in this contention. We do not know, nor can we reasonably approximate, the cost basis for the depreciable portion of the one-fourth interest purchased by the trust in 1948. In that year the trust acquired for $320,000 a one-fourth interest in the building and land subject to liens and encumbrances of $147,327.85. It is well recognized that where more than one item of property is purchased for a lump sum, there must be an allocation made among the assets purchased in order to provide such assets with a basis. Such allocation must be based upon the relative value of the several assets to the value of the whole at the time of the purchase. *123 C. D. Johnson Lumber Corporation, 12 T.C. 348. See also Nathan Blum, 5 T.C. 702; Clifford Hemphill, 25 B.T.A. 1351. The burden is upon the petitioner to establish the amount of the deduction, Burnet v. Houston, 283 U.S. 223; New Colonial Ice Co., Inc., v. Commissioner, 292 U.S. 435, and in our opinion the petitioner has not sustained his burden of proof. Here the petitioner submits no evidence of the fair market values of the land and the building which composed the one-quarter undivided interest purchased by him in 1948. Nor are we given any evidence to enable us to make a reasonable approximation. We are only shown that a lump sum of $320,000 was paid in 1948 by the Ostrow Trust to acquire an undivided one-fourth interest in the land and office building, subject to outstanding encumbrances and liens. The only way the petitioner could establish an increased cost basis for the depreciable portion, i.e., the building, of the second one-fourth interest acquired by the trust in 1948, is to introduce evidence either in the nature of appraisal values of the land and building at the time of the purchase or some other evidence *124 which would permit this Court to make an allocation of the purchase price as between the land and building. It would be no hardship for the petitioner to produce such evidence for the year 1948. Petitioner supports his claim for added depreciation by a complicated computation based upon book values on the books kept for the Commonwealth Building as of March 31, 1948, and resulting ratios of the depreciated cost of the building to the cost of the land, which he applies to make a highly artificial allocation of the purchase price paid by the trust in 1948 between the building and the land. The argument is meaningless. Book values such as these will not serve as a basis for making the allocation. These book values merely reflect the original acquisition costs of the land and building in 1942 and they cannot be given any probative value as to the relative value of the land and building in 1948, the year of the purchase. We hold that the respondent was correct in disallowing the additional deduction for depreciation taken by the petitioner, in his capacity as trust beneficiary, on the one-fourth interest acquired in the Commonwealth Building by the Ostrow Trust in 1948. Decision will *125 be entered for the respondent. Footnotes
1. SEC. 3797 [1939 Internal Revenue Code] Definitions. (a) When used in this title, where not otherwise distinctly expressed or manifestly incompatible with the intent thereof - * * *
(3) Corporation. - The term "corporation" includes associations, joint-stock companies, and insurance companies. * * *
REG. 111, Sec. 29.3797-2. Association. - The term "association" is not used in the Internal Revenue Code in any narrow or technical sense. It includes any organization, created for the transaction of designated affairs, or the attainment of some object, which, like a corporation, continues notwithstanding that its members or participants change, and the affairs of which, like corporate affairs, are conducted by a single individual, a committee, a board, or some other group, acting in a representative capacity. It is immaterial whether such organization is created by an agreement, a declaration of trust, a statute, or otherwise. It includes a voluntary association, a joint-stock association or company, a "business" trust, a "Massachusetts" trust, a "common law" trust, an interinsurance exchange operating through an attorney in fact, a partnership association, and any other type of organization (by whatever name known) which is not, within the meaning of the Code, a trust or an estate, or a partnership. An "investment" trust of the type commonly known as a management trust is an association, and a trust of the type commonly known as a fixed investment trust is an association if there is power under the trust agreement to vary the investment of the certificate holders. See Commissioner v. North American Bond Trust, 122 Fed. (2d) 545, cert. denied 314 U.S. 701↩. If the conduct of the affairs of a corporation continues after the expiration of its charter, or the termination of its existence, it becomes an association.