**WREN BOWYER AND JEANNE BOWYER, PETITIONERS, *v*. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.**

Docket No. 69487. Filed January 12, 1960.

*Carmon C. Harris, Esq.*, for the petitioners.
*David E. Mills, Esq.*, for the respondent.

MULRONEY, *Judge:* Respondent determined a deficiency in petitioners' income tax of $3,686.58 for the taxable year 1952 and $3,838.76

for the taxable year 1953. Respondent amended his answer to claim an additional deficiency of $472.58 for the year 1953. The only issue to be decided is whether any portion of $28,361.52, the proceeds received from the sale of copies of a city directory during the year 1953, is includible in petitioners' gross income for that year.

### FINDINGS OF FACT.

Some of the facts have been stipulated and they are found accordingly.

For about 18 years prior to 1953 J. H. (Jack) Foreman was the owner of a business called the Business Directory Service, which he operated as a sole proprietorship in Oklahoma City, Oklahoma. The business consisted of the publishing and selling of an annual city directory and advertising therein. The directory, called the Numerical Directory, listed city telephone numbers in sequence with corresponding addresses of telephone subscribers, and street and house numbers in sequence with corresponding telephone numbers.

Jack Foreman, in a letter written in 1945, which letter lacked testamentary significance, indicated his desire that his friend, Wren Bowyer (hereinafter sometimes called petitioner), who had often helped him in the publication of the directory, receive the Business Directory Service at his death. On March 6, 1953, a few days after Foreman's death, his daughter, sole beneficiary and executrix of her father's estate, carried out her father's wishes by assigning the business to Wren Bowyer, including, as the instrument of assignment stated, "good-will, accounts receivable, furniture and fixtures, cuts and printing materials and all personal property connected with said business." The assignment was with the understanding that assignor and the estate would be relieved of liability in connection with the business and that Wren Bowyer should pay the State inheritance tax and Federal estate tax caused by the inclusion of the business as an estate asset. The signed advance orders for the 1953 directories from about 1,000 customers were included in the estate at a valuation of $25,660.51 and Wren Bowyer paid a total of $1,015.67 as his share of said taxes.

Since March 6, 1953, Wren Bowyer has been operating the business known as the Business Directory Service as his sole proprietorship. Among the business assets transferred to petitioner were three notes of the Midwest Publishing Company given to Jack Foreman in the total sum of $3,500, plus interest. The said publishing company had, in August of 1952, executed a contract with Foreman to "print, bind, and deliver" the 1953, 1954, and 1955 directories (1,200 copies) for $5,250 a year. The contract recited the note obligations which the publishing company agreed to pay. Subsequently litigation de-

veloped between petitioner and the publishing company over the printing of the 1954 directory and petitioner canceled his contract for said printing and replevined lead and metal held by the printer. Other issues were added by pleading amendments and the ultimate judgment in this litigation gave petitioner judgment on the replevin issue, and a judgment on the notes, and gave the publishing company a judgment for "breach of contract" in the exact amount of the judgment on the notes and provided the judgment for breach of contract would be a setoff against the judgment on the notes, and the costs were taxed to the publishing company.

Petitioner and his wife, Jeanne Bowyer, live in Midwest City, Oklahoma, where, during the years in question, they also operated a retail furniture business. They filed their joint income tax returns for 1952 and 1953 with the district director of internal revenue at Oklahoma City, Oklahoma. In the 1953 income tax return there was attached the following schedule:

INCOME FROM DIRECTORY SERVICE
MARCH 1, 1953, TO DECEMBER 31, 1953

*Income:*

| | |
|---|---|
| Gross income | 0 |

*Expense:*

| | |
|---|---|
| Labor | $3,499.75 |
| Printing | 3,520.45 |
| Repairs and maintenance | 292.50 |
| Postage | 70.09 |
| Rent | 105.00 |
| Advertising | 315.00 |
| Telephone and telegraph | 230.12 |
| Travel and entertainment | 179.50 |
| Dues and subscriptions | 4.50 |
| Engraving, mats, etc. | 206.03 |
| Miscellaneous | 156.50 |
| Mailing lists | 1,032.55 |
| Total expenses | $9,611.99 |
| Net operating loss | (9,611.99) |

Petitioner actually received $28,361.52 in the year 1953 from the sale of the 1953 directories and advertising therein.

The general manner of carrying on the directory service business consisted of securing an order for the next year's directory at the time of delivery of the current directory. The price was $25 per copy, payable at the time of delivery and not in advance. In orders calling for a classified listing the price was $30 or $35. Advertising which was published in the directory was paid for when the directory was completed and delivered and not in advance. At the time of his

death, Foreman had about 1,200 copies of the 1953 directories approximately 85 per cent completed and he had advance orders for about 1,000 copies of the directories. All of the 1953 directories were completed and delivered by petitioner, who collected the sale price therefor and amounts paid for advertising therein. Petitioner, upon delivery of the 1953 directories, continued the practice of securing orders for the 1954 directory.

Respondent determined petitioners realized net income in 1953 from the directory business in the sum of $17,359.60. He arrived at this amount by determining petitioner received gross income from said business in said year of $28,361.52, and allowing as deductions the total expenses listed on petitioners' 1953 income tax return in the sum of $9,611.99 and another sum, $1,389.93, which was the total amount paid for Federal estate and State inheritance taxes in the Foreman estate. Respondent, by an amendment to his answer filed herein, sought the disallowance of the $1,389.93 as a deduction and thus to increase the amount of the deficiency by the sum of $472.58.

### OPINION.

It is stipulated petitioner acquired the directory service business in March of 1953. At that time the printer had about 1,200 of the 1953 directories almost completed. Petitioner testified that at the time he acquired the business there was a small amount of printing and all of the binding remaining to be done and he estimated the 1953 directories were about 85 per cent completed when he received the business. When the 1953 directories were completed by the printer and turned over to petitioner he delivered them to the customers who had earlier signed purchase orders for the 1953 directories. It is stipulated he received $28,361.52 in 1953 from the sale and delivery of the 1953 directories. Petitioner did not include any portion of the amount received as proceeds from the sale of the 1953 directories in his gross income for 1953. His position is that he acquired the 1,200 unfinished 1953 directories by gift and the fair market value of the unfinished directories was $25,660.51, so his sale of the directories, being merely the sale of assets received by gift, at about the fair market value as of the date of the gift, resulted in no income to him. Obviously, under his own argument he would have received at least gross income in the sum of $2,701.01 or the difference between $28,361.52 received and $25,660.51.

Respondent argues the transaction by which petitioner acquired the entire directory service business, which included the 1,200 unfinished 1953 directories, did not constitute a gift; that it was a sale transaction, and in either event, the $28,361.52 was not excludible from gross income, since said sum represents income from the prop-

erty received, namely, the entire business, and not gain from the sale of any property received.

We are of the opinion petitioner received the entire going business, called the Business Directory Service, by gift, except as hereafter discussed. It was not acquired by testamentary gift because of the failure of Foreman to express his wish that the business be given to petitioner after his death in a valid testamentary instrument. But Foreman's daughter, to whom it passed by will, gave the business to petitioner a few days after her father's death. It matters little that the form of transfer was an assignment. The daughter expressed her donative intent in the assignment: "to carry out the expressed intention of my late father." All of the circumstances point to a gratuitous transfer to petitioner by the daughter and a corresponding relinquishment of all of her rights to or control over the business.

Respondent's argument that the transaction did not constitute a gift is based upon the provision that petitioner's acceptance carried the promise that he pay the business obligations and pay the estate and inheritance taxes caused by the inclusion of the business as an asset in the estate.

We do not think petitioner's promise to pay existing business obligations would, under the circumstances presented here, prevent the transfer from being a gift. "A transfer of property of substantial value is not kept from being a gift by the payment of a trivial or merely nominal consideration." *Commissioner* v. *Ehrhart*, 82 F. 2d 338. The record shows about the only current obligation of the business was the printing bill for the 1953 directories in the total sum of $5,250, of which the sum of $3,500 had been paid by Foreman before he died. It is true Foreman had signed a contract for the printing of the 1954 and 1955 directories at the same price and litigation later developed between petitioner and the printer as to the printing for those years, but we do not think the obligation of the printing contract as to those later years is to be given much consideration on the issue of whether there was or was not a gift of the business. Petitioner's obligation as to future years' printing under the contract was based upon his employment of the printer in accordance with the contract terms and not upon his promise to relieve the daughter of liability for the present obligations of the business.

To accept respondent's argument on this point would mean one could never be the donee of a valuable going business if, in accepting the business assets, he promised to pay the business debts. It is true that if a transfer is on the consideration that the transferee assume burdensome obligations of the transferor, the transaction would be a sale and not a gift. But the circumstances attending this transfer show quite conclusively no present or prospective burdensome obliga-

tions of the donor were assumed by petitioner when the entire business was given to him. The unpaid printing bill was about the only obligation and this was but a fraction of the total amount of the signed purchase orders. We hold petitioner's agreement to relieve the daughter and her father's estate from liability of business obligations, does not prevent the transfer from being a gift.

The petitioner, as a condition to the transfer of the business to him, agreed to pay the Federal estate tax and State inheritance tax. He actually paid those taxes in the amount of $1,015.67. This was partial consideration for the transfer and is to be included in his basis for the property acquired. It was far less than the fair market value of the property and the excess was a gift. Sec. 1002, I.R.C. 1939.

Our holding that petitioner received the directory service business as a gift does not mean the entire sum received from the sale of the 1953 directories is excludible from petitioner's gross income. Receipts from the sale of the directories gave rise to income to the extent that gain was realized. The burden was upon petitioner to establish his basis in the 1953 directories from the sale of which he received a total amount of $28,361.52. Since the uncompleted directories were among the assets given to him when he was given the business he is entitled to use the basis of his donor for those directories to the extent of the gift plus the consideration paid for them. His donor's basis in the entire directory service business which she received by testamentary bequest was its fair market value on the date of her father's death. Petitioner's burden was to show that fair market value and then establish the portion of said sum and of the consideration paid that is to be allocated to the 1,200 unfinished 1953 directories. Petitioner testified the business was worth around $25,000 on the date of Foreman's death. He said there was a "sort of" rule for buying a criss-cross directory business at the face value of the purchase orders and here the face value of the purchase orders was $25,660.51. The estate and inheritance tax returns valued the purchase contracts at $25,660.51. The evidence, while quite vague, is probably sufficient for a finding that the business was worth about $25,660.51 at the date of Foreman's death. But there still must be some allocation of a portion of the $25,660.51 and a portion of the consideration to the unfinished 1953 directories. The business which was given to petitioner was a going business consisting of goodwill, notes, contracts, and other tangible and intangible property. We have said that in the case of a sale "if the total consideration is paid for a mixed aggregate of assets, its allocation among the several properties acquired should be based upon the relative value of each item to the value of the whole." *C. D. Johnson Lumber Corporation*, 12 T.C. 348, 363.

The rule is the same when the donee of a mixed aggregate of assets is using his donor's total fair market value basis. The allocation of that fair market value and cost basis, or $25,660.51, among the several properties acquired should be based upon the relative value of each item to the value of the whole. Some part of this total of $25,660.51 should be allowed petitioner as his basis for the directories sold in computing the gain realized from such sales. Respondent's adjustment in effect allocates a zero basis for the books sold. Petitioner would allocate the entire value of the business, or $25,660.51, to the 1,200 unfinished 1953 directories. We do not think either party is wholly correct.

It is undisputed that petitioner received notes, contracts, and physical property, and more important, he received a going business in which goodwill was probably its chief asset. This goodwill represented the present as well as future prospects for the profitable use of the assets given. The nature of the business was such that it comprehended a body of customers who usually made repeat advance orders for the directories each year. Petitioner, who had helped Foreman get out the directories for many years, testified this body of customers could be relied upon, with some degree of certainty, to renew their orders each year for the next year's directory. He even testified experience had shown that there was a slight increase in advance orders secured each year. As stated, there was no evidence introduced as to the separate value of the items but we feel some allocation of the total gift value and consideration must be made for the item of 1953 unfinished directories. *Cohan* v. *Commissioner*, 39 F. 2d 540; *Zenith Sportswear Co.*, 28 T.C. 455. Upon the whole record, we think $3,000 would be a reasonable allocation for the basis for the 1953 directories. Respondent allowed the deduction of business expenses as reported in petitioner's 1953 income tax return in the sum of $9,611.99. We hold petitioner should have a deduction of $3,000 on his basis for the directories sold, and the balance of the $28,361.52 is includible in his gross income. In the notice of deficiency respondent also allowed as a deduction the sum of $1,389.93 as "Federal and State estate tax." This is more than the sum petitioner paid for such taxes but in any event by timely answer, respondent sought to have the deduction excluded. Respondent had the burden on the issue but the record shows said payment of taxes, even in the lesser sum of $1,015.67 actually paid by petitioner, was not deductible. These were not petitioner's taxes and furthermore Federal estate and inheritance taxes are not deductible. Sec. 23(c)(3), I.R.C. 1939. They were partial consideration for the transfer of the business and an aliquot part thereof has been included in the petitioner's basis for the unfinished directories.

Petitioner introduced no evidence with regard to his 1952 income or respondent's determination of deficiency in that year and makes no argument in regard to that deficiency. Respondent's determination of deficiency for the year 1952 is sustained.

*Decision will be entered under Rule 50.*