OPINION The question is whether, as respondent contends, both the down-payment of $15,000 in 1961 and the $12,000 payment in 1962 must be ratably allocated to all three groups of assets sold in the year such payments were received or whether, as petitioner contends, these payments must first be applied entirely to a single group of assets, inventory, until the sales price (and cost basis) of such group ($22,943) is completely paid. Since the inventory was sold at cost ($22,943), it is obvious that under petitioner’s interpretation no gain from the sale of the business assets would be reported until the entire inventory cost was recovered. There is no factual justification in this record for allocating any of the payments received to any particular one of the three groups of assets sold. While the contract of sale carefully allocated the $50,000 purchase price for the business among the three groups of assets, there is nothing to indicate that the downpayment or indeed any of the payments was to be first applied to inventory. Section 2 of the agreement, which outlines the schedule of payments, contains no such intimation. Nor did petitioner’s testimony at the trial establish any such understanding between the parties as to priority of payment. In fact, petitioner was asked on direct examination whether he had any particular understanding with the buyer “as to which assets were to be paid for in what order” and his answer was “Not that I recall.” So if the issue turns on whether the payments as received should be allocated ratably among all three groups of assets, or may be allocated first to one group of assets and then to the others, we would decide the issue for respondent. But, while it is not too clear from the briefs, we believe petitioner argues primarily that where assets are sold for a cash downpayment with the balance payable in installments but with no notes or security being given by the buyer for the unpaid installments, the seller is entitled, for tax purposes, to apply all payments against his total cost in the assets sold before any gain must be reported. Petitioner’s allocation of the first $22,943 received against the cost of the inventory sold is consistent with this argument but, of course, his treatment of the $4,057 received in 1962 (only a part of which was allocated to the cost of the equipment and the balance of which was reported as gain) is not consistent with the above argument. We assume this may be because petitioner felt he was bound by the installment rules of accounting for gain with respect to the equipment and contracts. Petitioner cites such cases as Burnet v. Logan, 283 U.S. 404, and Nina J. Ennis, 17 T.C. 465, in support of his argument. However, we think petitioner misapplies the rules espoused in those cases to the transaction here involved and that those cases do not support his position here. Burnet v. Logan, supra, and its progeny establish the rule that when a cash basis taxpayer sells property for a cash downpayment and further payments which are indeterminate in amount, he may apply the payments received first to recover his cost or basis before reporting any taxable profit. Because of the uncertainty as to the total amount to be received, the transaction is not considered closed. This rule does not mean, as petitioner seems to contend it does, that in any transaction where several different types of property are sold for fixed amounts with, a part of the purchase price being paid in cash and the balance in deferred installments, the taxpayer may allocate the payments received among the various groups of assets sold in such a manner as to first recover his cost or basis in all the assets sold simply because the deferred payments are not evidenced by a note and no security is given. Nina J. Ennis, supra, also relied upon by petitioner, stands for the proposition that a mere contractual obligation of the buyer to pay the balance of the purchase price in years subsequent to the year of sale, not secured or evidenced by a note, is not the equivalent of cash, so a cash basis taxpayer does not have to include in his income in the year of sale his profit computed on the entire amount of the purchase price. In this case respondent is not seeking to tax petitioner on his entire profit on the sale bef ore the entire purchase price is paid. He is simply allocating the amounts of cash actually received by the taxpayer in the 2 years before us ratably among the three different groups of assets sold, instead of allocating the first payment received all to the inventory group. It is clear that the rationale of the Ennis case does not support petitioner’s position either. The contract herein specified the selling price of each group of assets. Finding no rule of law which would permit petitioner, under these circumstances, to recover his entire basis in all three groups of assets sold before reporting his gain on the sale of the equipment and the executory contracts on the installment method, as he elected to do, and finding no agreement, understanding, or other justification for permitting petitioner to allocate the payments received first to inventory until his cost therein was fully recovered, we must conclude that the payments as received by petitioner must be allocated ratably among the three groups of assets sold on the basis of 'the percentage of the total sales price represented by the amount of the sales price allocated to each group of assests in the sales contract. See C. D. Johnson Lumber Corporation, 12 T.C. 348, 363; 2 Mertens, Installment Sales, sec. 15.18; Rev. Rul. 57-434, 1957-2 C.B. 300; Rev. Rul. 55-79, 1955-1 C.B. 370. This is the procedure followed by respondent in determining the deficiencies. Consequently, Decision will be entered for the respondent.